DAVID R. SHELTON, Plaintiff, *v.* ROLFE T. GWATHMEY, Defendant.

Supreme Court, Trial Term, New York County, October 9, 1951.

*William J. Butler, Werner Ilsen* and *William B. Shedd* for plaintiff.

*Whitman Knapp* and *Vincent L. Broderick* for defendant.

MATTHEW M. LEVY, J.   The action was brought to recover $350,000 as claimed compensation for professional services rendered as a tax attorney.   The answer generally denied the allegations of the complaint, which set forth fully in general terms the facts constituting performance.   After an extended trial the jury rendered a verdict in plaintiff's favor in the sum of $135,000. Upon the conclusion of the trial, defendant moved to set aside the verdict, and for judgment in his favor.   The only issue reserved by the court for further consideration was whether the plaintiff lost the right to recover altogether by virtue of an alleged breach of confidential relationship.

The factual claim in that regard is that defendant's agent at defendant's request made known to plaintiff certain facts not in themselves illegal or immoral but concerning which defendant was sensitive.   These disclosures involved the place of defendant's birth and his change of name.   The defendant contends that plaintiff made this information available to his attorney, who obtained certified copies of the official records, which were used to cross-examine the defendant on matters extraneous to the issues in the suit for fees.   Thus, it is urged, the obligation of fidelity was violated, an essential term of the contract of employment was breached, and, consequently, plaintiff forfeited his right to any compensation.   I have read the voluminous record, and I have, of course, given the most careful and searching consideration to this intriguing issue.

Undoubtedly, in the enforcement of the Canons of Professional Ethics (Canon No. 37), if not pursuant to the ordinary principles of contract law (4 Williston on Contracts [rev. ed., 1936], § 1022), a breach of fidelity with respect to confidences of serious import to the client should result in forfeiture of a lawyer's right to compensation.   But, it seems to me, disclosure should and must be permitted to the extent that it is essential to preserve the lawyer's rights in bona fide controversies with his client (1 Thornton on Attorneys at Law [1914 ed.], § 127; Richardson on Evidence [7th ed., 1948], § 490; 8 Wigmore on Evidence [3rd ed., 1940], § 2312).   In the circumstances of this case, if the information whose use is assailed has any substantial bearing upon any of the contested issues, it cannot be said that such use violated the duty of fidelity.

Where, as here, the defendant was subject to serious tax liabilities, penalties and prosecutions, and the good faith of his business transactions was at issue between him and the United States Treasury, the whole biographical background of

the defendant may well have been material in the proper protection of the defendant's interests. The information was certainly vouchsafed to the plaintiff either to enable him more adequately to advise the defendant what to do in the light of his claimed sensitivity as to these matters; or there was the relation of these facts concerning defendant, knowledge of which plaintiff would have to possess in order to deal more effectively with his adversaries so as not to embarrass defendant's cause. Indeed, the query naturally suggests itself why these matters should have been confided to plaintiff at all, if, in the task to be accomplished for defendant, they were of no materiality — matters with which the negotiating parties in the tax controversies could not and would not in any conceivable circumstances be confronted. Moreover, the defendant contended on the one hand that the plaintiff really accomplished very little in the tax controversies, and in fact that a settlement with the Government was not what the defendant desired; and on the other hand the plaintiff urged that the matters were so involved with the services to be performed as to render them more arduous.

In the light of these conflicting claims, the plaintiff might quite reasonably and ethically have felt that the matters disclosed could properly be taken into consideration in evaluating the plaintiff's conduct in the representation of his client — which professional conduct was vigorously attacked by the client. Certainly, in the circumstances I cannot conclude that the facts thus invoked were so foreign or unessential to the issues as to have no relation to them whatsoever, and that the use of the information was so remotely connected with the protection of the plaintiff's rights as to be wholly needless. On the contrary, I find that — in addition to the claim of right to use the information as a basis of impeachment of credibility (*People* v. *Johnston*, 228 N. Y. 332), and in addition to the appropriate use of the matter of change of name in clarification of the identity of parties to various documents essential upon the trial — the matters were not without some germane and substantial association with the work plaintiff was performing on defendant's behalf, and for which the defendant was disputing the plaintiff's claim to compensation. There was, therefore, in my view, no breach of fidelity, if indeed the duty existed as to such matters as thus given to the plaintiff by the defendant.

If it be said that I am resolving a controversy as a matter of law which should have been determined by the jury as the triers of the facts — and assuming the correctness of this contention

without conceding its propriety — the obvious response is that the issue now tendered by the defendant was not raised in the answer, and no unequivocal and direct attack was made by clear and precise objection, based on claim of breach of confidence, to any part of the cross-examination eliciting information concerning the matters classified as confidential.

The defendant argues that the issue now under consideration could not have been raised in the circumstances in the answer — if indeed it was necessary to do so in order to enable defendant to take advantage of it — for it originated as claimed only upon the cross-examination of defendant as a witness called in his own behalf. While the defendant emphasizes the cross-examination, the record shows that the matter of change of name received attention early in the trial, for, on plaintiff's direct examination it was defendant's counsel who suggested that the mystery be cleared and identification of signatories to or persons named in various documents be thus clarified. Indeed, the defendant had been earlier prepared for the development when the matter was one of the subjects of plaintiff's application for examination of the defendant before trial.

The complaint contains no allegation respecting performance as is permitted pursuant to rule 92 of the Rules of Civil Practice. It alleges at length the facts of the claimed employment and the claimed facts of full performance of such employment. The answer was a general denial. It was not necessary, in this state of the pleadings, for plaintiff to prove that, after the rendition of his services, he had not breached the professional relationship by not disclosing any information asserted to have been imparted to him in confidence. The precedents relied upon by defendant (*Dickinson* v. *Tysen*, 209 N. Y. 395; *Chatfield* v. *Simonson*, 92 N. Y. 209) involved faithless performance by a plaintiff of the agreement in chief, and, of course, denial of due performance put the plaintiff to the proof of the very issue to be litigated — the proper rendition of the services for which compensation was sought. In the case at bar, if plaintiff established the employment and the performance as alleged, and the jury so found, plaintiff would be entitled to recover, since proof of performance in the manner in which it was alleged would without further proof on plaintiff's part support recovery. The denial generally of the allegations of the complaint in the state of the pleadings here would constitute no warning to the plaintiff of a claim of post-performance breach of contract by plaintiff, in that his duty of fidelity to his client was **violated.**

Their is special significance in this observation in the light of the fact that prior to the trial of the cause, as defendant now claims, plaintiff suffered such violation in connection with the pretrial examination proceeding. In the course of the trial, as defendant claims, this breach widened and, accordingly, further opportunity was afforded to defendant to raise the issue in such manner as would give full warning to the plaintiff thereof. The matters on which defendant now relies as raising the issue presented were, in the opinion of the court, likely to take the plaintiff by surprise. Certainly, the interposition of such an issue is not suggested by the present pleadings and should have been raised, if at all, in the manner provided by section 242 of the Civil Practice Act. Even if such a course was not suggested prior to the trial, the issue could have been raised during trial as it was eventually raised after the parties had rested. In fact, it was not until then that a direct attack was made. It does not appear that any objection raised as the examination proceeded was motivated by anything more than concern to protect defendant's sensitivity, for if, as is now claimed, confidences were reposed within the broadest duty of fidelity, this proposition would have quickly taken the form of definite objection upon the specific ground of a breach of confidence.

I believe that in the circumstances the pleadings should and could (Rules Civ. Prac., rule 166) have been brought into such shape as would properly have raised the issue by amendment at some time before the presentation of evidence was ended. If the issue had been squarely projected in timely and in proper fashion, either by way of pleading or amendment or objection, a number of matters which come to mind might have been litigated. They need not be litigated now. To permit the defendant successfully to attack plaintiff's recovery by the method of delayed and surprise assault runs counter to the Marquis of Queensbury rules governing forensic fisticuffs at law.

The motion is denied. Thirty days' stay; sixty days to make a case.