JAMES A. KIZER *v.* JOYCE N. DAVIS

[No. 2-1275A358. Filed November 16, 1977.]

*Richard T. Heide, Robert L. Bauman, Heide, Gambs & Mucker,* of Lafayette, for appellant.

*William K. Bennett, Bennett, Boehning & Poynter,* of Lafayette, for appellee.

SULLIVAN, P.J.—Attorney James Kizer filed suit against his former client, Joyce Davis, to recover on quantum meruit for legal services rendered. Trial to the court resulted in a judgment in Davis' favor, from which Kizer perfected this appeal. We reverse for the reason that the decision is contrary to law. The trial court's reason for denying recovery is invalid.

The trial judge entered special findings and conclusions, upon his own motion, pursuant to TR. 52(A).[1] His "memorandum opinion and judgment" reads as follows:

"The plaintiff's complaint is predicated upon the theory that he has performed services at the instance and request of the defendant, and that he has not been fully paid therefor. Plaintiff seeks a judgment based upon the rule of law, frequently enunciated by the higher courts of this state, that an attorney may, as a rule, recover on quantum meruit for services rendered by him to a client. See *French v. Cunningham et al* (1897), 149 Ind. 632; *Finney v. Estate of Carter, etc.* (1959), 130 Ind. App. 381. If the application of this well recognized rule were fully dispositive of the issues, this case would be resolved in favor of the plaintiff. However, I believe that there are other factors which must be considered.

"The plaintiff's time records reveal he has invested time and effort on behalf of the defendant. Judicial notice having been

---

1. Neither party filed a written request for special findings. Volunteered findings were made pursuant to the provision in TR. 52(A) which reads: "*Upon its own motion,* or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury ... shall find the facts specially and state its conclusions thereon." (Emphasis supplied)

taken of the records in the litigation in which the plaintiff appeared for the defendant, however, there can be no doubt that the plaintiff did not in fact expend as much time on court appearances as reflected by his records. If the time shown for court appearances is erroneous, it is not unlikely that error also exists on time records relating to telephone and office conferences and the performance of other legal services. An additional factor is the defendant's expression to the plaintiff near the end of February, 1973, that she felt that the employment of additional counsel was necessary. Her unhappiness regarding the terms of the pendente lite order in her divorce case and her concern that the case would be assigned for trial without sufficient information or discovery regarding the assets of her husband justified her position that replacement of her attorney, or the hiring of additional counsel, would be well advised. This situation should have suggested to the plaintiff a serious question as to whether he was then in a position to render professional services to Mrs. Davis in a manner that she would approve or appreciate. Mrs. Davis testified that after the employment of Thomas L. Brooks most of her contact was with him, and the plaintiff's time records show that his contact with the defendant diminished after Mrs. Brooks had been retained. When the defendant expressed her desire that Mr. Kizer withdraw from all further representation, he had no choice but to honor this request. See *Bauer et al. v. Biel et al.* (1961), 132 Ind. App. 224; *In Re the Annexation of Territory to City of Muncie* (1971), 276 N.E.2d 198; *Indiana Code of Professional Responsibility*, DR 2-110(B)(4).

"In a case of this kind the Indiana Code of Professional Responsibility binds both the court and the plaintiff. This is significant in view of EC 2-23 which provides as follows:

'A lawyer should be zealous in his efforts to avoid controversies over fees with clients and should attempt to resolve amicably any differences on the subject. He should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client.'

"Plaintiff did not allege any fraud in his complaint and none was demonstrated by the evidence. While Mr. Kizer undoubtedly feels that Mrs. Davis has imposed upon him, as a matter of law the court cannot determine from the evidence that her conduct was so great, culpable, flagrant, shameful, or without justification so as to entitle the plaintiff successfully to

maintain this action. To permit the plaintiff to recover in this case would require the court to ignore the Indiana Code of Professional Responsibility or condone a breach thereof. Accordingly, the plaintiff should take nothing by his complaint.

"IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff shall take nothing by his complaint and that all costs hereof shall be and they are hereby taxed and assessed against the plaintiff."

This is not a case in which we can draw inferences from the record to support the trial court's general finding against Kizer. We must reject, in particular, Davis' contention that the judgment should be affirmed because the evidence most favorable to it sustains the inference that Kizer's services were worth no more than the $350 he was paid.[2] An affirmance on that basis is precluded by the trial court's contrary finding which specifically states that Kizer would have prevailed on quantum meruit.

Davis would have us disregard this special finding. She cites *Hinshaw v. Security Trust Co.* (1911), 48 Ind. App. 351, 93 N.E. 567, for the proposition that a finding not made at the request of any of the parties but volunteered by the trial court may be disregarded on appeal since it is treated as a general finding, and not a special finding. Although that was the law prior to the adoption of the Indiana Rules of Trial Procedure, current trial practice under TR. 52 now permits the trial court to make special findings upon its own motion. *See Hunter v. Milhous* (1974), 159 Ind. App. 105, 305 N.E.2d 448, 459. The relevant language in subsection (A) is presented in footnote 1, *supra.* Subsection (D) similarly contemplates such volunteered findings by providing for "special findings of fact upon less than all the issues in a case when (1) special findings of fact are made but are not required under this rule." The last part of subsection (D) provides further that such "findings of fact with respect to issues upon which findings are not required shall be recognized as findings only upon the issues or matters covered thereby and the judgment or general finding, if any, shall control as to the other

---

2. Kizer testified at trial that he received a retainer fee of $50 plus an additional $300 during the divorce action in payment for his services.

issues or matters which are not covered by such findings." See 3 Harvey, Indiana Practice, at 424-25.

Bound as we are by the trial court's special findings, we are unable to discern from the opinion a valid reason for awarding Kizer no recovery at all. The trial court explicitly stated that the action on quantum meruit would have been resolved in Kizer's favor *but for* "other factors which must be considered." These factors fall into two categories: (1) Ethical Consideration 2-23 and (2) those relating to Kizer's representation.

## I.

### ETHICAL CONSIDERATION 2-23

We agree with Kizer's contention that the trial court erroneously applied this Ethical Consideration as a bar to his recovery.[3]

Ethical Consideration 2-23 is part of the Code of Professional Responsibility which was adopted by the Indiana Supreme Court on March 8, 1971 for attorneys admitted to the bar of this State. The Supreme Court's authority to promulgate rules of legal ethics derives from its plenary power over the admission of attorneys to the practice of law and the supervision of those already admitted. Jurisdiction over these matters is conferred upon the Supreme Court by Article 7, Section 4 of the Indiana Constitution which provides:

"The Supreme Court shall have no original jurisdiction except in admission to the practice of law; discipline or disbarment of those admitted; . . ."

---

3. Although Kizer mainly challenges the trial court's interpretation of Ethical Consideration 2-23, he also questions its application to the matter in controversy in the first instance. His brief contains the following assertion:

"There is no ruling precedent that Ethical Consideration 2-23 imposes a condition upon an attorney's right to sue a client for a fee. Unless this Court so holds, the judgment of the trial court must be reversed because it is contrary to law . . . [A]s a matter of public policy, Ethical Consideration 2-23 could arguably be a condition to an attorney's right to sue and recover a fee. However, Plaintiff-Appellant contends that the trial court misconstrued, misinterpreted, and misapplied Ethical Consideration 2-23. . . ."

See also, Indiana Rules of Procedure, Appellate Rule 4(A)(1 and 2); *In re Farr* (1976), 264 Ind. 153, 340 N.E.2d 777, 780.

Our Supreme Court has stated that although the Code lacks the force and effect of Indiana statutes or case law, it does evidence the proper standard of conduct for the legal profession. *In re Kuzman* (1975), Ind., 335 N.E.2d 210, 212; *Bell et al. v. Conner* (1968), 251 Ind. 409, 241 N.E.2d 360; *Tokash v. State* (1953), 232 Ind. 668, 115 N.E.2d 745. Specifically, the Code operates as the rule of law in disciplinary proceedings before the Supreme Court. It delineates the conduct that will render an attorney subject to censure. As stated in Section 2(a) of Admission and Discipline Rule 23:

> "Any conduct that violates the Code of Professional Responsibility or the Code of Judicial Conduct and Ethics heretofore adopted or as hereafter modified by this Court or any standards or rules of legal and judicial ethics or professional responsibility hereafter adopted by this Court shall constitute grounds for discipline. . . ."

This discussion of the Code's authority in disciplinary proceedings brings us now to the issue at bar. Does an *Ethical Consideration accompanying the Code* have application in a *civil suit* brought by an attorney to recover his legal fees?

It appears that this precise question has not been subject to judicial resolution. In *McInerney v. Massasoit Greyhound Assn., Inc. et al.* (Mass. 1971), 269 N.E.2d 211, 220, Ethical Consideration 2-23 was mentioned but only as a cautionary note to the attorney therein whose legal fee was held to be excessive and unreasonable as a matter of law. We have not found a single reported case in which an attorney has been barred from recovering his legal fees because of Ethical Consideration 2-23.

In this and in other jurisdictions, the right of an attorney to recover compensation for his services, either under express contract or on quantum meruit, is well established. *E.g., French v. Cunningham et al.* (1898), 149 Ind. 632, 49 N.E. 797; *U.S. Mortgage Co. v. Henderson et al.* (1887), 111 Ind. 24, 12 N.E. 88; *Finney v. Estate of Carter, etc.* (1960), 130 Ind.

App. 381, 164 N.E.2d 656; *Roll v. Mason et al.* (1893), 9 Ind. App. 651, 37 N.E. 298; *Schaffner v. Kober* (1891), 2 Ind. App. 409, 28 N.E. 871; *Neville v. Davinroy* (1976), 41 Ill. App. 706, 355 N.E.2d 86; *Smith, Ranscht, Pollock, Manos & Connors v. Palmeri* (1976), 52 A.D.2d 691, 385 N.Y.S.2d 129. See also, I.C. 33-1-3-1 (Burns Code Ed.1975) (attorney's lien on judgment for legal fees). See generally, 78 C.J.S. Attorney and Client, §160.

However, there are cases outside Indiana which also hold that an attorney may not recover fees for legal services rendered in contradiction to the requirements of professional responsibility. *E.g., Rolfstad, Winkjer, Suess, McKennett & Kaiser v. Hanson* (N.D. 1974), 221 N.W.2d 734; *Yount et al. v. Zarbell et ux.* (1943), 17 Wash.2d 278, 135 P.2d 309; *Lauglin v. Boatmen's Nat. Bank of St. Louis* (Mo. 1942), 163 S.W.2d 761; *Rippey et al. v. Wilson* (1937), 280 Mich. 233, 273 N.W. 552. See also, *Shelton v. Gwathmey* (1951), 201 Misc. 75, 107 N.Y.S.2d 653, 655. *But cf., Deupree v. Garnett* (Okla. 1954), 277 P.2d 168. A contract of employment which violates an express prohibition in the Code likewise has been held void as against public policy. *Goldstein et al. v. Lees* (1975), 120 Cal. 253, 46 Cal.App.3d 614; *Brink's, Inc. et al. v. Gravesen et al.* (1941), 309 Ill.App. 571, 33 N.E.2d 497.

Even if we assume, arguendo, that the Code is a proper consideration in such actions brought by attorneys in this State, it is not the Ethical Considerations which would have application. The Code of Professional Responsibility consists of three separate parts, each of which has a distinct meaning and purpose. With regard to the force and effect of the Ethical Considerations, the "Preliminary Statement" to the Code[4] specifically states that the Ethical Considerations are "aspirational" goals only. The Statement reads, in full, as follows:

"In furtherance of the principles stated in the Preamble, the American Bar Association has promulgated this Code of Professional Responsibility, consisting of three separate but interrelated parts: Canons, Ethical Considerations, and Disciplinary

---

4. The "Preliminary Statement" which accompanies the Code was adopted by the Supreme Court together with the Preamble, Canons, Ethical Considerations and Disciplinary Rules.

Rules. The Code is designed to be adopted by appropriate agencies both as an inspirational guide to the members of the profession and as a basis for disciplinary action when the conduct of a lawyer falls below the required minimum standards stated in the Disciplinary Rules.

"Obviously the Canons, Ethical Considerations, and Disciplinary Rules cannot apply to nonlawyers; however, they do define the type of ethical conduct that the public has a right to expect not only of lawyers but also of their non-professional employees and associates in all matters pertaining to professional employment. A lawyer should ultimately be responsible for the conduct of his employees and associates in the course of the professional representation of the client.

"The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.

*"The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.*

"The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. Within the framework of fair trial, the Disciplinary Rules should be uniformly applied to all lawyers, regardless of the nature of their professional activities. The Code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct. The severity of judgment against one found guilty of violating a Disciplinary Rule should be determined by the character of the offense and the attendant circumstances. An enforcing agency, in applying the Disciplinary Rules, may find interpretive guidance in the basic principles embodied in the Canons and in the objectives reflected in the Ethical Considerations." (Emphasis supplied)

We therefore conclude that the Disciplinary Rules, and not the Ethical Considerations, prescribe the conduct which constitutes a violation of the Code of Professional Responsibility. Reference to the Ethical Considerations as aspirational objectives indicates that they are not compulsory in character. Rather they express high ideals towards which attorneys are urged to strive. But attorneys are not compelled to achieve these aspirational goals at the risk of a disciplinary sanction or civil liability.

Nor do we find in any of the Disciplinary Rules which follow the Canon to which Ethical Consideration 2-23 is appended[5] a general proscription against actions by attorneys for the recovery of legal fees. The only limitation in this regard is found in Disciplinary Rule 2-106 which prohibits the collection of "an illegal or clearly excessive fee." See also, Disciplinary Rule 2-107. The absence of a Disciplinary Rule to correspond with Ethical Consideration 2-23 must mean that it is not, *per se*, a breach of the Code for an attorney to sue for a fee, even when the suit is unnecessary "to prevent fraud or gross imposition by the client." Such actions are not contrary to the Code unless the fee demanded is *illegal or clearly excessive*.

This is consistent with two of the A.B.A. Opinions on the subject. Although these Opinions advise attorneys to avoid suits against clients, they nevertheless contemplate that attorneys may have occasion to sue for a fee. A.B.A. Opinion 250 (1943) states:

> "Ours is a learned profession, not a mere money-getting trade . . . Suits to collect fees should be avoided. Only where the circumstances imperatively require, should resort be had to a suit to compel payment. And where a lawyer does resort to a suit to enforce payment of fees which involve a disclosure, he should carefully avoid any disclosure not clearly necessary to obtaining or defending his rights."

See also, A.B.A. Opinion 320 (1968).[6]

---

5. Canon 2 states: "A Lawyer Should Assist the Legal Profession in Fulfilling Its Duty to Make Legal Counsel Available."

6. A.B.A. Opinion 320 states: "An attorney has the right to contract for any fee he chooses so long as it is not excessive (see Opinion 190) and this Committee is

Indeed, it is in the public interest that attorneys receive fair compensation for their services. Adequate compensation is necessary in order to assure effective representation and to maintain the integrity and independence of the bar. *Manatee County v. Harbor Ventures, Inc.* (Fla. App. 1974), 305 So.2d 299, 301. See also, Ethical Consideration 2-17.

The concept of fair compensation also has a constitutional dimension. Article 1, Section 21 of the Indiana Constitution provides:

"Compensation for services or property. — No man's particular services shall be demanded without just compensation. No man's property shall be taken by law, without just compensation . . ."

Our cases have held accordingly that attorneys cannot be compelled to perform services without compensation. *Knox County Council v. State ex rel. McCormick* (1940), 217 Ind. 493, 29 N.E.2d 405; *Webb v. Baird* (1854), 6 Ind. 13; *Blythe v. State* (1853), 4 Ind. 525.

This and the foregoing discussion leads us to conclude that Ethical Consideration 2-23 was never intended as a rule of law, nor can it be applied as a bar to an otherwise successful action on quantum meruit. In bringing this suit, Kizer committed no breach of the Code of Professional Responsibility unless the fee he demanded was "illegal or clearly excessive." If it was, he may be subject to sanctions imposed by the Supreme Court in a properly instituted disciplinary proceeding.[7] The present controversy, however, concerns the reasonableness of the fee claimed by Kizer. That is a determination which the trial judge must make under the law of quantum meruit. The applicable principles of quantum meruit preclude him from rendering a judgment (if any) against Davis in an excessive amount.[8]

not concerned with the amount of such fees unless so excessive as to constitue a misappropriation of the client's funds (see Opinion 27)."

7. Amount or character of compensation as ground for disciplinary action against an attorney: *In re Healey* (1973), 260 Ind. 311, 295 N.E.2d 594; *In re Underwood* (1972), 259 Ind. 323, 286 N.E.2d 828. See generally, Annot., 70 A.L.R.2d 962.

8. The factors enumerated in Disciplinary Rule 2-106 as guidelines for determining the reasonablenss of an attorney's fee are embodied in the law of quantum meruit. See generally, Annot., 57 A.L.R.3d 475.

## II.

### FACTORS RELATING TO KIZER'S REPRESENTATION

With respect to Kizer's representation, the special findings entered by the trial court emphasize the following: Kizer's exaggeration of the time he spent on the Davis divorce case; his failure to heed her request not to perform certain services; and Davis' dissatisfaction with Kizer's representation.

The meaning to be drawn from these findings is unclear. They may have been cited by the trial judge in connection with his interpretation of Ethical Consideration 2-23. We refer to the following language from the "memorandum opinion and judgment":

"While Mr. Kizer undoubtedly feels that Mrs. Davis has imposed upon him, as a matter of law the court cannot determine from *the evidence* that her conduct was so great, culpable, flagrant, shameful, and without justification so as to entitle the Plaintiff successfully to maintain this action. To permit the plaintiff to recover in this case would require the court to ignore the Indiana Code of Professional Responsibility or condone a breach thereof." (Emphasis supplied)

The findings with respect to Kizer's representation may constitute reference to *the evidence* which led the trial court to reach that conclusion. If this is the context in which these special findings were made, then they are not separate from the Ethical Consideration question and hence cannot provide a valid basis for the trial court's decision.

On the otherhand, the factors relating to Kizer's representation may represent a reason for the decision separate from Ethical Consideration 2-23. Each of the factors cited bears upon the validity of a quantum meruit claim[9] and might sustain the inference that the reasonable value of

9. To recover on quantum meruit, it must be shown that the legal services were rendered with the client's full knowledge and approval. *Potter v. Dailey et al.* (1942), 220 Ind. 43, 40 N.E.2d 339; *Estate of Anderson v. Smith* (1974), 161 Ind. App. 480, 316 N.E.2d 592.

In determining the reasonable value of the legal services rendered, the time expended by the attorney alone is not a controlling factor. *Fitzgerald, etc., et al. v. Wasson Coal Min. Corp. et al.* (1965), 138 Ind. App. 176, 212 N.E.2d 398. Among

Kizer's services did not exceed the amount which he was already paid. Yet the court's reference to these factors is inconsistent with its specific finding earlier that Kizer would be entitled to prevail on quantum meruit. Any inference which we might draw in favor of the trial court's general finding is therefore precluded by this special finding. Our only recourse is to reverse and remand the case for further proceedings consistent with our opinion.

Reversed and remanded.

Buchanan and White, JJ. concur.

NOTE—Reported at 369 N.E.2d 439.

other things, consideration may be given to the general quality of the effort expended by the attorney. *Frith v. State* (1975), 263 Ind. 100, 325 N.E.2d 186. See also, *Neville v. Davinroy* (1976), 41 Ill. App. 706, 355 N.E.2d 86, 90.

A trial judge, relying upon his own knowledge and professional experience, may take judicial notice of what a reasonable attorney's fee would be. *In re Lockyear* (1974), 261 Ind. 448, 305 N.E.2d 440; *In re Davis* (1932), 204 Ind. 227, 183 N.E. 547; *Geberin v. Geberin* (1977), 172 Ind. App. 255, 360 N.E.2d 41.