[No. 1035-3.    Division Three.    April 15, 1975.]

KENNETH E. PIXTON *et al, Appellants*, v. MANUEL J. SILVA, JR., *et al, Respondents.*

*Nels A. Hansen*, for appellants.

*Ken Earl, Garfield R. Jeffers, James M. Danielson*, and *Hughes, Jeffers, Jeffers & Danielson*, for respondents.

GREEN, J.—The plaintiffs, Kenneth and Alyce Pixton, commenced this action against defendants, Manuel and Ila Silva, for specific performance of an earnest money agreement to purchase a dairy farm. Alternatively, plaintiffs sought to recover from the Silvas and defendant Farm Management Services, Inc., real estate brokers, $20,000 paid by Mr. Silva as earnest money. At the close of plaintiffs' case, the trial court granted defendants' motions to dismiss the complaint. Plaintiffs appeal.

Defendants Silva, dairy operators in Battleground, Washington, decided to move and purchase another dairy. They employed Ray Mudd, an associate broker of Farm Management, to locate a dairy for them. Plaintiffs Pixton, owners of a dairy operation in Adams County, Washington, had previously listed their dairy for sale with Farm Management, but that listing had expired. On February 23, 1973, Mr. Pixton happened to come upon Mr. Mudd and Mr. Silva in a coffee shop. At that time, it was determined that the Pixtons were still interested in selling their dairy. That evening Mr. Mudd visited the Pixton home where the terms of sale were discussed. Pixtons stated they wanted $215,000 for their dairy and to that price $15,000 was added as a sales commission for Farm Management, making a total selling price of $230,000.

On the following day, an earnest money agreement was entered into between Mr. and Mrs. Pixton and Mr. Silva, providing for a sale price of $230,000 and forfeiture of the earnest money as liquidated damages should Mr. Silva re-

fuse to complete the purchase. Mr. Silva paid $20,000 to Farm Management as earnest money. The agreement erroneously referred to the dairy as being situated in Grant rather than Adams County.

The next weekend Mr. Silva brought his wife and children to visit the Pixtons' dairy. Mr. Pixton showed the dairy operation to Mr. Silva and his son, while Mrs. Pixton showed Mrs. Silva around and they discussed the general area: churches, associations and schools. During this visit, Mrs. Silva discovered that the farm was in Adams rather than Grant County, and upon inspecting the house noted a number of things that were not to her liking. She did not discuss these matters with the Pixtons nor with her husband until after they had returned to Battleground.

The following day, Mr. Silva called Mr. Mudd and told him that he was not going through with the purchase of the dairy and requested return of the $20,000 earnest money. Mr. Mudd conveyed this information to the Pixtons and requested them to sign a document releasing Farm Management from all obligations, which they refused to do. Six or seven days later, Farm Management returned the earnest money to Mr. Silva.

These facts are substantially embodied in the court's findings of fact. Plaintiffs Pixton assign error to various of these findings and to findings proposed but not given; however, none of the findings to which error has been assigned are set out verbatim as required by CAROA 43 and consequently must be accepted as verities on appeal. *Union Bank v. Kruger*, 1 Wn. App. 622, 463 P.2d 273 (1969). In any case, our review of the evidence indicates that the essential findings are amply supported by the evidence.

Based upon these facts, the trial court concluded that (1) defendants were not bound by the earnest money agreement because Mrs. Silva had not signed or ratified it; (2) Farm Management was not negligent in failing to obtain Mrs. Silva's signature or in returning the earnest money since no contract had been effected between the Pixtons and the Silvas; and (3) Silvas and Farm Management are

each entitled to an award of $750 reasonable attorney's fees from the Pixtons.

First, plaintiffs contend the trial court erred in concluding that the Silvas were not bound by the earnest money agreement because Mrs. Silva had not signed or ratified it. Plaintiffs recognize that in 1972 the legislature amended RCW 26.16.030 to provide:

> Either spouse, acting alone, may manage and control community property, with a like power of disposition as the acting spouse has over his or her separate property, except:
>
> . . .
> (4) Neither spouse shall purchase or contract to purchase community real property *without the other spouse joining in the transaction of purchase or in the execution of the contract to purchase.*

(Italics ours.) Plaintiffs properly point out that prior to this amendment, the husband could *acquire* community real property, but could not sell, convey or encumber it without joinder of the wife. Further, when community real property was sold by one spouse without joinder of the other, the sale or contract of sale was not void but voidable. *Sander v. Wells,* 71 Wn.2d 25, 426 P.2d 481 (1967). Plaintiffs argue that just as a contract of sale signed by one of the spouses could be authorized or ratified by the nonsigning spouse, *Whiting v. Johnson,* 64 Wn.2d 135, 390 P.2d 985 (1964); *In re Horse Heaven Irrigation Dist.,* 19 Wn.2d 89, 141 P.2d 400 (1943); *Sander v. Wells, supra,* a contract to purchase community real property signed by one spouse can be ratified or authorized by the nonsigning spouse. Thus, plaintiffs contend that Mrs. Silva, during her visit to the dairy, ratified, authorized, acquiesced or participated in the purchase of the dairy thereby binding the community to the contract of purchase as evidence by the earnest money agreement. We disagree.

■ Discussing the effects of the new amendment to RCW 26.16.030 upon real property acquisition, Professor Harry M. Cross in *Equality for Spouses in Washington*

*Community Property Law—1972 Statutory Changes*, 48 Wash. L. Rev. 527, 535-37 (1973), observes that the exceptions to this statute should be strictly construed and concludes that:

> If both spouses do not "join" or "participate" in the transaction, the new law should give the nonjoining spouse power to disaffirm the transaction and recover community funds paid the seller. The purchase transaction, in a community property context, *is beyond the power of one spouse acting alone.*

(Footnote omitted. Italics ours.) Here, the record reveals no evidence that Mrs. Silva joined her husband in the execution of the earnest money agreement. Further, we do not find sufficient evidence that Mrs. Silva "joined" or "participated" in the transaction sufficiently to justify a finding that she authorized or ratified the earnest money agreement. We agree with the trial judge's characterization of Mrs. Silva's conduct:

> It is true that Mrs. Silva came over to this area and went out and looked at the property and discussed things, very largely with Mrs. Pixton, while the men were talking about more specifics of the property. But, there is no place in the evidence any showing that Mrs. Silva ever ratified or authorized the contract. It appears to me that she pretty well held her peace and wanted some time, evidently, to think it over. And it was after they went home that she definitely decided that she was not going to enter into the contract, because she came over with the purpose of looking this property over and reaching a decision. And by none of her actions did she mislead anybody, and she had a right to look it over and then think it over, and that is the way she handled the matter.

The trial court properly concluded "that no enforceable contract was ever effected between the Silvas and the plaintiffs" as required by RCW 26.16.030 (4).

██ Notwithstanding this conclusion, plaintiffs contend that Mr. Silva as sole manager of the community dairy business could legally bind the community to the purchase of plaintiffs' dairy "in the ordinary course of such business" without joinder of Mrs. Silva. RCW 26.16.030 (6) provides:

> Neither spouse shall acquire, purchase, sell, convey, or encumber the assets, including real estate, or the good will of a business where both spouses participate in its management without the consent of the other: *Provided,* That where only one spouse participates in such management the participating spouse may, *in the ordinary course of such business,* acquire, purchase, sell, convey or encumber the assets, including real estate, or the good will of the business without the consent of the nonparticipating spouse.

(Italics ours.) Assuming arguendo that Mr. Silva was the *sole* manager of their present business, the sale of a community dairy in one area and the purchase of a $230,000 community dairy in another area is not "in the ordinary course of *such* business." (Italics ours.) With respect to the acquisition or transfer of business assets under RCW 26.16.030 (6), Professor Cross concludes at page 541:

> [A]lthough the section does not explicitly address itself to the purchase of a community business, it does state, in part, "Neither spouse shall *acquire, purchase* . . . the assets, including real estate, and goodwill of the business without the consent of the other . . . ." This language along with the policy of protecting the community "blue chip" assets suggests that *both spouses always will need to consent to an acquisition of a community business.*

(Footnotes omitted. Italics ours.) H. Cross, *Management and Disposition of Community Property,* 48 Wash. L. Rev. 541 (1973). Clearly, Mr. Silva alone could not bind the community to the purchase of plaintiffs' dairy under the proviso of RCW 26.16.030 (6).

■ Secondly, plaintiffs contend that even if the earnest money agreement cannot be specifically enforced, they are nevertheless entitled to recover the earnest money paid under the following provision of the agreement:

> If seller complies with the terms of this agreement and purchaser fails or refuses to complete the purchase, the earnest money shall be forfeited as liquidated damages unless seller elects to enforce this agreement or seek actual damages.

They argue that earnest money on a contract will be forfeited even though the vendor is unable to enforce the agreement by specific performance. *Underwood v. Sterner*, 63 Wn.2d 360, 387 P.2d 366 (1963); *Dubke v. Kassa*, 29 Wn.2d 486, 487, 187 P.2d 611 (1947); *Schweiter v. Halsey*, 57 Wn.2d 707, 710, 359 P.2d 821 (1961). Each of these cases involves contracts that had been executed by all of the necessary parties but were unenforceable by specific performance for other reasons. Here, there is no contract upon which a forfeiture of the earnest money can be based because the contract had not been executed by all of the necessary parties.

It is also claimed the court erred in refusing to hold Farm Management negligent in (1) failing to obtain Mrs. Silva's signature, (2) returning the earnest money to the Silvas, and (3) advising plaintiffs they had a firm contract. As just indicated, the earnest money was properly returned to Silvas. There is no evidence to support plaintiffs' contention that Farm Management was negligent in failing to obtain Mrs. Silva's signature. Her refusal to sign the earnest money agreement cannot under the evidence in this case be attributed to Farm Management. Finally, there is insufficient evidence to support the claim that Farm Management advised plaintiffs that they had a firm contract.

In conclusion, plaintiffs contend that the trial court abused its discretion in awarding attorney's fees in the amount of $750 to each of the defendants. We agree. The trial court's award was based upon a provision of the earnest money agreement. There being no valid contract, an award of attorney's fees to the defendants based upon a provision of that contract is error.

The judgment of dismissal is affirmed except as to the award of attorney's fees which is reversed. Each party shall bear its own costs.

McINTURFF, C.J., and MUNSON, J., concur.