[No. 1514-2. Division Two. January 11, 1977.]

JAMES N. DAILY, *Respondent*, v. EARLE G. A. WARREN, ET AL, *Appellants*.

---

H. *John Aitken* and *Pebbles, Swanson & Lindskog,* for appellants.

*John B. Troup* and *Troup & Christnacht,* for respondent.

REED, J.—Earle G. A. Warren and Irene G. Warren, his wife, appeal from a Thurston County Superior Court judgment which forfeited to James N. Daily, as seller, $25,000 deposited by Warrens as earnest money and part payment for the purchase of a tavern.

The issues presented on appeal are: (1) Did Mrs. Warren "join" in the purchase transaction, as required by RCW 26.16.030(4), so as to render the marital community liable on the purchase contract which she did not sign? (2) Was a $24,000 promissory note intended to be earnest money and partial payment so as to be subject to forfeiture as liquidated damages? (3) Was the liquidated damages provision of the contract in reality one for a penalty and thus unenforceable? We resolve all issues against the Warrens and affirm the judgment of the trial court as modified.

The Warrens and Alex W. Jessiman were interested in purchasing a tavern as an investment. Commencing on July 1, 1972, they looked at approximately 25 to 30 such properties from Aberdeen to Seattle without finding one to suit them. In October 1972, through the auspices of the listing broker, Messrs. Warren and Jessiman became interested in the 2121 Tavern in Tacoma, Washington. After inspecting the books and records of the business and meeting on several occasions with its owner, James N. Daily, both men, on

October 24, 1972, signed and presented through the broker an earnest money agreement for its purchase. The offer was for $215,000 for real property and inventory and was accompanied by $1,000 as earnest money in the form of a check drawn by Mr. Warren on the Warren marital community bank account. Daily refused the offer, insisting that the earnest money was insufficient. The parties met again to discuss the earnest money and down payment requirements only, there being no disagreement on price. At this meeting Daily insisted on $25,000 earnest money and partial payment, but agreed to accept $24,000 in the form of a note, payable within a few days, because Warren and Jessiman needed time to realize cash from the disposition of other properties.

On October 25, Warren and Jessiman signed and presented to Daily a new earnest money agreement which provided *inter alia* "received . . . $25,000.00, in the form of check for $1,000.00, cash for $............, Note for $24,000.00 due 11/10/72, paid or delivered . . . as earnest money in part payment of the purchase price . . ." The agreement further provided for payment of an additional $27,500 on or before January 15, 1973, and the balance in monthly installments. This second agreement, accompanied by the $1,000 check and a promissory note for $24,000 was accepted by Daily on October 27. Although both earnest money agreements described Warren and Jessiman as "married men," the agreements and the promissory note were not signed by their respective spouses, neither of whom personally participated in negotiations with Daily.

The three men agreed on November 1, 1972, as a closing or "prorating" date for the purchase, which was contingent on state approval of liquor license transfers. Also, because all parties anticipated state approval by November 15, 1972, Warren and Jessiman actually commenced to work at the tavern on November 2, 1972, with the understanding they would receive all profits of the business after that date. On November 8, 1972, when Jessiman became ill and could not.

continue the tavern work, Warren called Daily to inform him they would not go through with the purchase. Daily brought suit on the promissory note against Warren and Jessiman and their marital communities, alleging it was earnest money and part payment which had been forfeited as liquidated damages. The trial court concluded that Mrs. Warren had "joined" or "participated" in the purchase of the tavern so as to bind the marital community, and that the promissory note was given as earnest money and part payment and was properly forfeited as liquidated damages. Warrens appeal from a judgment entered against them individually and as a marital community.[1] We agree with the trial court's conclusions.

This case hinges upon an interpretation of RCW 26.16.030 (4), which provides:

> Neither spouse shall purchase or contract to purchase community real property without the other spouse *joining in the transaction of purchase* or in the execution of the contract to purchase.

(Italics ours.) We have found only one Washington appellate decision interpreting this 1972 amendment to our community property laws. In *Pixton v. Silva*, 13 Wn. App. 205, 534 P.2d 135 (1975), a wife was held not to have joined or participated in a transaction for the purchase of a dairy farm. The facts negating a joinder were that she had not signed the earnest money agreement, she saw the property for the first time only after execution of the agreement by her husband, she did not discuss terms with the sellers, she expressed neither approval nor disapproval to the sellers, and the next day she insisted the contract be repudiated.

As noted in *Pixton*, it has been suggested that, even though the exceptions in this statutory provision should be strictly construed to shield the marital community from

---

[1] Alex W. Jessiman became deceased prior to the trial in superior court; a separate judgment was entered against his estate, but his widow Grace A. Jessiman, and the Jessiman marital community were absolved of liability on the note upon a finding that Mrs. Jessiman did not "join" in the purchase transaction. There was no appeal from that judgment.

liability for acts of one spouse acting alone, decisions construing our prior community property law should be looked to in determining what evidence will support a finding of "joinder." Cross, *Equality for Spouses in Washington Community Property Law—1972 Statutory Changes,* 48 Wash. L. Rev. 527 (1973). Under the former statutes the husband acting alone as manager of the community property could bind the marital community to a *purchase* of real property. *Kupka v. Dickson,* 72 Wn.2d 217, 432 P.2d 657 (1967); *Baker v. Murrey,* 78 Wash. 241, 138 P. 890 (1914). Such was not the case, however, when the husband attempted to *transfer* or *encumber* the community real property; former RCW 26.16.040[2] specifically required that the wife join in the execution of the actual instrument of conveyance and that it be acknowledged by her. Washington cases construing this provision broadly interpreted "join" to mean "participation," which in turn was held to include the elements of authorization, ratification, and estoppel. *Louron Indus., Inc. v. Holman,* 7 Wn. App. 834, 502 P.2d 1216 (1972); *Sander v. Wells,* 71 Wn.2d 25, 426 P.2d 481 (1967); *Whiting v. Johnson,* 64 Wn.2d 135, 390 P.2d 985 (1964). The *Pixton* court appears to adopt the reasoning of this line of cases because it canvassed the proofs for evidence of authorization or ratification. *See also Everest v. Levenson,* 15 Wn. App. 645, 648, 551 P.2d 159 (1976), approving oral ratification by a nonsigning spouse, holding the spouse had "join[ed] in executing the security agreement or bill of sale, if any" as required by RCW 26.16.030(5).

We think the present statute governing purchases, RCW 26.16.030(4), should be so construed and not narrowly interpreted to require actual personal negotiation and par-

---

[2]Former RCW 26.16.040 provided in part:

"The husband has the management and control of the community real property, but he shall not sell, convey or encumber, the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife: . . ."

ticipation by a nonsigning spouse. The joinder requirement for a purchase is therefore satisfied if there is sufficient evidence of authorization, ratification, or estoppel. *Cf. Pixton v. Silva, supra.* We do not see such a construction as diluting the protection intended to be afforded such a spouse, under the statute, be it husband or wife.

In the instant case there is ample support for the trial court's conclusion that Mrs. Warren authorized and thus "joined" or "participated" in the transaction of purchase of the tavern within the spirit of RCW 26.16.030(4). That support consists of the court's unchallenged factual findings that: (1) Mrs. Warren knew her husband was interested in purchasing the tavern; (2) she inspected the tavern with an eye to exercising her right to approve or disapprove, as she had done in the past; (3) she expressed approval to Mr. Warren after she had seen the tavern; (4) she permitted Mr. Warren to proceed without her in further negotiations for its purchase; (5) she knew of and approved the use of community funds for the original money deposit; (6) she knew Mr. Warren had actually signed a new agreement to purchase for $200,000 or more and believed he had put an additional $30,000 of community funds into a partial down payment and had agreed to pay a substantial additional sum in January; (7) she knew she had been listed as a "partner" on liquor license applications; (8) she knew of the arrangement under which the two men started working at the tavern, and (9) she acknowledged the purchase would have been consummated had Jessiman not become ill.

We are not unmindful that many of these acts took place *after* Mr. Warren had already signed the second purchase agreement, and that the trial court apparently did not find them sufficient to establish an estoppel. Nor did the trial judge, in his memorandum opinion, discuss ratification. We need not elaborate on the applicability of these alternative theories, however, because Mrs. Warren's acts clearly show knowledge, acquiescence, consent, and approval, and sup-

port the trial court's conclusion she "authorized" Mr. Warren to purchase for the marital community.

On the issue of whether the promissory note constituted earnest money and a partial payment, making it subject to forfeiture on default of purchase, or whether it was a deferred contract payment from which the Warrens would be absolved, the evidence is conclusive. The terms of the agreement itself are unambiguous and spell out clearly that the note was given and accepted as both earnest money and partial payment. In addition, the evidence shows Daily refused to accept anything less and the parties specifically negotiated this one aspect of the purchase, all other terms having apparently been agreed upon. *See Underwood v. Sterner*, 63 Wn.2d 360, 387 P.2d 366 (1963).

On the final issue raised by this appeal we agree with the trial court's finding that the $25,000 liquidated damages provision bore a reasonable relationship to the total purchase price and to the actual damages the seller might reasonably incur should the purchaser default. *Underwood v. Sterner, supra.*

Lastly, we note the judgment appealed from runs not only against Mr. Warren and the marital community, but against Mrs. Warren individually. No such judgment was sought nor could it have been obtained upon the evidence presented and we perceive this to be a mere oversight. The judgment is therefore modified so as to grant judgment only against Mr. Warren individually and the Warren marital community.

The judgment is affirmed as modified.

PETRIE, C.J., and HALE, J. Pro Tem., concur.

Petition for rehearing denied February 10, 1977.

Review denied by Supreme Court July 27, 1977.