**Steven P. BIGGS and Barbara L. Biggs, Plaintiffs-Appellants,**

v.

**Arlo A. MARSH, Jr., Nancy L. Marsh, Roth, Wehrly, Heiny, Inc., Tammy Lamle, Nancy McNeely and Graber Realty, Inc., Defendants-Appellees.**

No. 3–981A237.

Court of Appeals of Indiana,
Third District.

March 22, 1983.

Rehearing Denied May 23, 1983.

Mark S. Pantello, Sowers & Benson, Fort Wayne, for plaintiffs-appellants.

Craig R. Finlayson, Higgins, Swift & Finlayson, Fort Wayne, for appellee Graber Realty, Inc.

Thomas M. Gallmeyer, F.L. Dennis Logan, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for appellee Arlo A. Marsh, Jr.

William L. Sweet, Jr., Barrett, Barrett & McNagny, Fort Wayne, for appellee Roth, Wehrly, Heiny, Inc.

GARRARD, Judge.

This lawsuit arose out of the efforts of Steven and Barbara Biggs (the plaintiffs) to purchase a residence owned by Arlo Marsh, Jr. and Nancy Marsh, husband and wife (the owners) as tenants by the entireties.

In search for a house in 1977 the plaintiffs contacted Tammy Lamle, a sales representative of Roth, Wehrly, Heiny, Inc., realtors. (Unless the context requires otherwise, we hereafter refer to Lamle and the corporation together as "realtor no. 1.") As a result the plaintiffs were directed to the owners' house.

On March 29 the plaintiffs executed an "Agreement to Purchase" directed to the owners offering $65,000 for the house.[1] They gave realtor no. 1 a check for $3,250 as an earnest money deposit. On March 30 Mr. Marsh executed this agreement. However, despite the fact that the property was owned as a tenancy by the entirety, Mrs. Marsh did not then, or at any subsequent time, sign the agreement.

Also, on March 30, Nancy McNeely, a sales representative for Graber Realty, Inc. (hereafter collectively referred to as "realtor no. 2") approached the owners about selling the house to a different party at a higher price. This sale was eventually effected.

According to plaintiffs' statements in the record in answer to interrogatories on March 31, Ms. Lamle told them that the owners did not intend to sell to them, but later that same day a vice-president of realtor no. 1 informed them that Mr. Marsh would honor the contract. The plaintiffs then advertised their own home for sale. On April 11 Mr. Marsh assertedly contacted the plaintiffs, apologized for the inconvenience and indicated that he was still willing to sell to them, and on April 13 the plaintiffs entered a contract to sell their existing home. Subsequently, the owners indicated they would not sell to the plaintiffs. At this time they tendered back the plaintiffs'

earnest money check, but the plaintiffs refused it.

On April 21, 1977 the plaintiffs commenced suit against the owners seeking to enjoin the third party sale and to secure specific performance of their "Agreement to Purchase." On May 26, 1977 the court ruled against the plaintiffs on all counts, and on June 8 the owners sold their house to another buyer for $68,900. No appeal was taken in that case.

Then in December 1977, the plaintiffs commenced the lawsuit that is the source of this appeal. In essence this lawsuit sought money damages in three counts. Count 1 against the owners asserted a claim based upon Mr. Marsh's alleged misrepresentations about sale to the plaintiffs. Count 2 alleged negligence on the part of realtor no. 1 for failing to secure Mrs. Marsh's signature to the "Agreement to Purchase." Count 3 named realtor no. 2 as defendants and alleged tortious interference with contract or the formation of a contract. In addition punitive damages were sought against all defendants.

Subsequently, each of the defendants moved for summary judgment. On April 15, 1980 the court granted summary judgment in favor of owner Nancy Marsh stating that the agency issues upon which the claim depended were barred by res judicata as a result of the prior suit. At that time the court denied summary judgments to the other defendants.

The case was later assigned to a different judge pursuant to plaintiffs' motion, and the remaining parties renewed their motions for summary judgment. On March 31, 1981, the judge granted summary judgment in favor of all remaining defendants and the plaintiffs initiated this appeal.

Before addressing the principal contentions concerning these summary judgments we address two preliminary assertions made by the plaintiffs.

---

1. From answers to interrogatories it appears that the owners had listed the home with real-

tor no. 1 at a price of $68,900.

■ First it is claimed that we should reverse as to appellees Lamle and McNeely (the involved employees of the two realtors) because of their failure to file appellate briefs. We note that both employers did file timely briefs and that they address the issues and contentions of liability applicable to themselves and their respective employees. Moreover, the rule in question demands a prima facie showing of error, and we have discretion in its invocation. *Contech Architects & Engineers v. Courshon* (1979), Ind.App., 387 N.E.2d 464, 473. In this case we will not reverse merely for the failure to file briefs.

■ Secondly, plaintiffs point out that the summary judgments granted, except the one for Nancy Marsh, were reassertions of previously denied motions. Pointing to Indiana Rules of Procedure, Trial Rule 53.3 [2] concerning repetitive motions, the plaintiffs urge that when these second motions were not ruled upon within five (5) days after filing they were automatically deemed denied. From this position they then assert that the court was bound to enforce TR 53.3 by denying the second motions and that it erred in failing to do so. We disagree. The plaintiffs have misperceived the thrust of the rule. It is designed to prevent delay through the repetitive filing of motions. *See W. Harvey, Indiana Practice*, vol. 3, TR 53.3 (1982 Supp. p. 91).

■ The trial court has, however, inherent power to reconsider any of its previous rulings so long as the action remains *in fieri*. *McLaughlin v. American Oil Co.* (1979), Ind.App., 391 N.E.2d 864; *Indiana Suburban Sewers, Inc. v. Hanson* (1975), 166 Ind.App. 165, 334 N.E.2d 720. Accordingly, no error resulted from the court ruling on the motions for summary judgment even though the five day period referred to in TR 53.3 had expired.

We turn then to the propriety of granting summary judgment to the various groups of defendants.

Because each defendant/appellee relies at least in part on the doctrine of res judicata to support the grant of summary judgment, we begin by reviewing the relevant law in this state. It is generally recognized that there are four elements of res judicata:

> "The basic elements of the doctrine of res judicata are: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the matter now in issue was, or might have been, determined in the former suit; 3) the particular controversy adjudicated in the former action must have been between parties to the present suit or their privies, and 4) the judgment in the former suit must have been rendered on the merits."

*Glass v. Continental Assurance Co.* (1981), Ind.App., 415 N.E.2d 126, 128. *See also Indiana Univ. v. Indiana Bonding & Surety* (1981), Ind.App., 416 N.E.2d 1275, 1283; *Middlekamp v. Hanewich* (1977), 173 Ind. App. 571, 364 N.E.2d 1024, 1033. There is no contention in the present litigation disputing the jurisdiction of the court in the suit for injunction and specific performance or denying that the judgment entered therein was on the merits.

■ Res judicata is generally described as consisting of two branches, claim preclusion and issue preclusion. When claim preclusion applies every question which was within the issues and might have been

2. "(A) Repetitive motions and motions to reconsider ruling on a motion. No hearing shall be required upon a repetitive motion or upon motions to reconsider orders or rulings upon a motion. Such a motion by any party or the court or such action to reconsider by the court shall not delay the trial or any proceedings in the case, or extend the time for any further required or permitted action, motion, or proceedings under these rules.

(B) Effect of court's delay in ruling upon repetitive motion or motion to reconsider ruling on a motion. Unless such a motion is ruled upon within five (5) days it shall be deemed denied, and entry of service of notice of such denial shall not be required. This rule 53.3 does not apply to an original motion for judgment on the evidence under Rule 50 after the jury is discharged, to amend or make additional findings of fact under Rule 52(B), an original motion to correct errors under Rule 59, or for correction of relief from judgments under Rule 60 or to the original motions to the extent expressly permitted or expressly designated as extending time under these rules."

proved will be presumed to have been litigated and no further action between the parties, or their privies, will be permitted as to any such issue. *Town of Flora v. Indiana Service Corp.* (1944), 222 Ind. 253, 53 N.E.2d 161.

■ Issue preclusion arises where the claims are not the same, but some fact or question has been determined in the former suit and is again put in issue in a subsequent suit between the same parties or their privies. In such cases the former adjudication of that fact, if properly presented and relied upon, will be conclusive on the parties. *Town of Flora, supra. See also Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448; *State, Indiana State Hwy. Comm. v. Speidel* (1979), Ind.App., 392 N.E.2d 1172; *Illinois C.G.R. Co. v. Parks* (1979), Ind.App., 390 N.E.2d 1078.

■ In claim preclusion, where the other requirements are met, the critical question is whether the present claim was within the issues of the first; whether the claim represents an attempt to split a cause of action (or defense). It has generally been said that the test for making this determination is whether identical evidence will support the issues involved in both actions. *Speidel,* 392 N.E.2d at 1175. *Compare Fairwood Bluffs Conservancy Dist. v. Imel* (1970), 146 Ind.App. 352, 255 N.E.2d 674, 681.

## ARLO A. MARSH[3]

■ We find that plaintiffs' present suit is not barred by the doctrine of claim preclusion. Plaintiffs' first suit against the owners sought injunctive relief and specific performance based upon contract.[4] The second claim appears to assert fraudulent misrepresentation. The evidence to establish the material elements of a fraudulent misrepresentation of an existing fact reasonably relied upon by the plaintiffs to their detriment[5] differs substantially from the evidence necessary to sustain the contract claim. *Union Cent. Life Ins. Co. v. Schidler* (1892), 130 Ind. 214, 29 N.E. 1071.

Moreover, while we do not dispute Marsh's assertion that the first suit did establish between the plaintiffs and the owners, as a matter of issue preclusion, that the agreement signed only by Mr. Marsh was not a binding contract and that Mr. Marsh was not acting as the agent of Mrs. Marsh, those issues as we have pointed out are not determinative of a claim for fraud.

From the materials on file before the trial court we are unable to conclude that a claim of fraud has been sufficiently precluded to otherwise entitle Mr. Marsh to summary judgment.[6] It follows that the summary judgment in his favor must be reversed.

## REALTOR NO. 1

■ We reject realtor no. 1's assertion that claim preclusion bars the action against them. The essence of plaintiffs' claim is that realtor no. 1 was negligent in its handling of the matter. Under the "identical evidence" test of *Speidel,* claim preclusion does not apply.

Realtor no. 1 next asserts its summary judgment is sustainable upon the basis of issue preclusion. It contends alternatively that (a) it should be deemed a party to the first litigation although it was not named therein; (b) if not deemed a party, its liability is derivative and issue preclusion should apply; or (c) we should abandon the requirements of identity of parties and mutuality of estoppel.

■ As to the first contention, it is clear that realtor no. 1 was not a party to the first litigation nor is it in privity with the owners. *See, e.g., Bailey v. Beekman*

---

**3.** No appeal was taken from the summary judgment in favor of Nancy Marsh.

**4.** The equitable nature of the claim alone will not bar application of res judicata. *United Oil & Gas Co. v. Ellsworth* (1909), 43 Ind.App. 670, 88 N.E. 362.

**5.** *Sachs v. Blewett* (1933), 206 Ind. 151, 185 N.E. 856.

**6.** On appeal Marsh has not argued the propriety of summary judgment vis-a-vis the essential elements of the fraud claim.

(1977), 173 Ind.App. 154, 362 N.E.2d 1171, 1174. While the court in *Speidel* recognized that we will look to substance rather than mere form in determining the identity of the parties, 392 N.E.2d at 1176, the owners and realtor no. 1 are more than nominally different. Identity of parties is lacking, and the defect is not overcome by the doctrine of *Glass v. Continental Assurance Co.* (1981), Ind.App., 415 N.E.2d 126, 128 recognizing an exception where the liability in question is derivative. The issue of the realtor's negligence in failing to secure an enforceable contract is not dependent on or derived from the liability of the owners. Finally, while we agree that some relaxing of identity and mutuality requirements could be beneficial,[7] that is the task of our Supreme Court. *Speidel, supra.* We decline to consider the question further here in view of the essential differences in the nature of the claims.

The action against realtor no. 1 was not barred by res judicata.

 The realtor contends it was nevertheless entitled to summary judgment because a real estate agent is merely an intermediary between the buyer and seller and it owed no duty to the plaintiffs. The problem with this assertion is that it ignores that such a realtor may in a specific case be employed to act as an agent for a principal. In that case he owes a duty to act in good faith. *Loer v. Neal* (1956), 127 Ind.App. 246, 137 N.E.2d 728. His duty to his principal is generally recognized as including the exercise of reasonable care on behalf of his principal. *See* Annot., 94 *A.L.R.2d* 468; *cf., Stuart v. Stumph* (1891), 126 Ind. 580, 26 N.E. 553; *Fisher v. Dynes* (1878), 62 Ind. 348. Here the materials before the court do not conclusively establish the extent of the relationship so that it cannot be said as a matter of law no duty was owed.

We face a similar problem attempting to sustain the judgment on account of an absence of negligence. We agree with the court in *Pixton v. Silva* (1975), 13 Wash.

App. 205, 534 P.2d 135 that the mere refusal of Mrs. Marsh to sign the agreement is no evidence of negligence on the part of realtor no. 1. As one of the tenancy by entireties owners it was within her province to accept or reject the proposal. On the other hand, if realtor no. 1 was the special agent of the plaintiffs, the materials before the court are insufficient to establish either the presence or absence of negligence in its discharge of its duties.

We conclude the summary judgment cannot be sustained.

REALTOR NO. 2

 The elements of an action for tortious interference with a contract are (1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Daly v. Nau* (1975), 167 Ind.App. 541, 339 N.E.2d 71.

In addition it has been recognized that an action may lie under Indiana law for tortious interference with a business relationship even though there was no valid contract. In such cases, however, it appears to be critical that the defendant acted illegally in achieving his end. *Spier v. Home Ins. Co.* (7th Cir.1968), 404 F.2d 896; *Ft. Wayne Cleaners & Dyers Ass'n. v. Price* (1956), 127 Ind.App. 13, 137 N.E.2d 738.

 Concerning the claim for tortious interference with a contract, we do not dispute the general rule that to be valid and enforceable a contract for the sale of tenancy by the entirety real estate requires the signatures of both spouses. *See Wienke v. Lynch* (1980), Ind.App., 407 N.E.2d 280; *Gates v. Petri* (1957), 127 Ind.App. 670, 143 N.E.2d 293.

 Plaintiffs' appellate argument addressing the requirement of illegality where

---

7. *See Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552; *Blonder-Tongue Laboratories, Inc. v. University of Illi-*nois Foundation* (1971), 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788.

it is not claimed there was a valid contract appears to focus upon several provisions of the Code of Ethics of the National Association of Realtors. The violation of such provisions, even if established, would not thereby constitute illegal conduct on the part of the realtor. *Accord, Kizer v. Davis* (1977), 174 Ind.App. 559, 369 N.E.2d 439.[8]

We are nevertheless constrained to hold that the materials before the court were insufficient to permit the grant of summary judgment, however unlikely it may appear that plaintiffs will ever be able to prevail upon the merits. *Podgorny v. Great Central Ins. Co.* (1974), 160 Ind.App. 244, 311 N.E.2d 640.

The summary judgments appealed from are therefore reversed and the case is remanded for further proceedings.

HOFFMAN, P.J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring in result.

I concur with the result reached by the Majority but for a different reason. I do not concur with the Majority's interpretation of Ind. Rules of Procedure, Trial Rule 53.3. If the Rule had been applied as it was intended by the Indiana Supreme Court, the Majority's Opinion would have been much shorter and this Opinion would never have been written. The Majority's interpretation is specious and flawed. It assumes that as long as the litigation is *in fieri* the trial court can act on any repetitious motion. Inherent power of the trial court is not in issue here. The trial court did not act *sua sponte*. It acted upon a second motion for summary judgment after five days had expired. It acted contrary to the dictates of Trial Rule 53.3 which is designed to avoid delay by repetitious motions and to expedite the litigation process before trial so that the judicial system can truly serve

the needs of society rather than frustrate them. Therefore, I concur in result.

Trial Rule 53.3 is clear and explicit. It provides:

"(B) Effect of court's delay in ruling upon repetitive motion or motion to reconsider ruling on a motion. Unless such a motion is ruled upon within five (5) days it shall be deemed denied, and entry of service of notice of such denial shall not be required...."

This rule applies to Trial Rule 56, summary judgments. The only exclusions from the rule are Trial Rules 50, 52(B), 59, and 60.

In this case, a motion for summary judgment was denied by one trial judge. Later, a change of judge was granted and a second motion for summary judgment was filed for a second trial judge to rule upon. After the expiration of five days, the party opposing the motion for summary judgment should have a clear signal under our Rules of Procedure so that he can proceed with the preparation of his case for trial. Otherwise, the expense and time of trial preparation by the opposing party is an unreasonable gamble and fosters unpreparedness for trial. The opposing party should feel free to take further depositions, arrange for travel of out-of-state witnesses, interview and pay expert witnesses, and any other necessary trial preparation to expedite the litigation. The Majority's interpretation of TR. 53.3 blunts the cutting edge of the rule and turns the clock back to the days of code pleading.

I would have reversed the trial court for the reason that the motion for summary judgment was no longer available for ruling due to the five day limitation imposed by TR. 53.3(B). This does not mean that the trial court could not have *sua sponte* exercised its inherent power and changed its ruling upon the motion for summary judgment. If this had been the course of action taken by the trial court, this Court would

---

**8.** In *Adler v. Fenton* (1860), 65 U.S. (24 How.) 407, 410, 16 L.Ed. 696 it was said:

"An act legal in itself, and violating no right, cannot be made actionable on account of the motive which superinduced it. It is the province of ethics to consider of actions in their relation to motives, but jurisprudence deals with actions in their relation to law, and for the most part independently of the motive."

only be reviewing the reasoning of the trial court for invoking its inherent power and any abuse of discretion.