[No. 51168–3.  En Banc.  June 27, 1985.]

NICHOLS HILLS BANK, *Appellant,* v. RICHARD M. MCCOOL, JR., ET AL, *Respondents.*

*Robert T. Beattie, Jr.* (of *Bishop, Cunningham, Hartman & Beattie*), for appellant.

*George C. Nickum, Jr.,* for respondents.

DURHAM, J.—Nichols Hills Bank appeals from a trial court judgment dismissing its claim against the marital community of Richard McCool, Jr., and Carole Elaine McCool. The bank contends the trial court erred by finding that: (1) Carole McCool did not ratify, authorize or consent to a guaranty agreement signed by her husband, (2) the bank could not reach Richard McCool's one–half interest in the McCool community property, and (3) the guaranty agreement precluded the bank from obtaining a lien on the McCool family residence.

In September 1979, Richard McCool III, the son of Rich-

ard McCool, Jr., and Carole McCool, owed approximately $8,000 to Nichols Hills Bank and an additional $8,000 to other lenders. As a result, McCool III met with Homer Paul, president of Nichols Hills Bank, to obtain an additional loan and consolidate his debts. Paul refused to make an additional loan unless McCool III could obtain a guarantor. McCool III then telephoned his parents and discussed his financial situation with them. He talked with both his mother and father, but specifically asked his father to contact Paul. After the conversation with their son, McCool, Jr. and his wife discussed the various alternatives through which they could help McCool III. At trial, McCool, Jr. stated that the substance of the conversation consisted of "my suggesting various courses of action and my wife objecting to them." Nonetheless, McCool, Jr. telephoned Paul and agreed to act as a guarantor. McCool, Jr.'s uncontested testimony regarding the events that transpired immediately after the conversation was as follows:

I went upstairs and told her that I had told Mr. Paul I would sign the guarantee, and her immediate reaction was strong, and it was negative and emotional. She went into another room. We didn't speak for some time, and in short, she led me to believe that she totally disapproved of what I had said.

Pursuant to the telephone conversation, Paul mailed McCool, Jr. a guaranty agreement and a financial statement form on which McCool, Jr. was to list his assets and liabilities. McCool, Jr. provided the requested information and signed the agreement.

Carole McCool did not sign the guaranty agreement. In fact, she had absolutely no contact with Nichols Hills Bank personnel. After the telephone conversation between Paul and her husband, however, she knew that her husband was going to sign the agreement and complete the financial statement form. She may have assisted him by typing the financial information onto the form. In addition, she did not attempt to inform the bank of her objections to the agreement.

After receiving the signed guaranty agreement, the attached letter and the completed financial statement form, Paul approved McCool III's request for a loan. Subsequently, McCool III defaulted on his loan and the bank obtained a judgment against him. McCool III, however, filed for bankruptcy and his debt was discharged. Nichols Hills Bank then instituted an action against Richard McCool, Jr., individually, and the marital community of Richard McCool, Jr., and Carole McCool, to recover the balance owed by McCool III.

The trial court entered judgment against Richard McCool, Jr., separately, but dismissed the claim against the marital community. In addition, the trial court found that the terms of the guaranty agreement precluded a judgment lien from being placed on the family home.

From the trial court's dismissal of the claim against the marital community, Nichols Hills Bank appeals.

I

The bank's first contention on appeal is that Carole McCool expressly or impliedly consented to guarantee her son's debt to Nichols Hills Bank. RCW 26.16.030(2) specifically prohibits either spouse from giving away community property without the express or implied consent of the other.[1] In a ruling consistent with Washington law, the trial court found that because the McCool suretyship obligation was created solely out of parental affection, the obligation is a gift of community credit which does not become a community obligation unless both parties expressly or impliedly consented. *See, e.g., Bank of Wash. v. Hilltop Shakemill, Inc.*, 26 Wn. App. 943, 949–50, 614 P.2d 1319 (1980); *Sun Life Assur. Co. of Can. v. Outler*, 172 Wash. 540, 544, 20 P.2d 1110 (1933). Neither party contests this finding and our task is, therefore, limited to reviewing the trial court's determination that Carole McCool did not consent to the guaranty agreement.

---

[1]RCW 26.16.030(2) provides: "Neither spouse shall give community property without the express or implied consent of the other."

■■■ The consent of a spouse to a transaction is a factual determination to be evaluated from the circumstances of each case. *Bowman v. Hardgrove,* 200 Wash. 78, 93 P.2d 303 (1939). In reviewing questions of fact, our role is limited to determining whether substantial evidence exists to support the trial court's findings. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). "Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premise." *Holland v. Boeing Co.,* 90 Wn.2d 384, 390–91, 583 P.2d 621 (1978). Here, the trial court's finding that Carole McCool did not consent to the guaranty agreement is supported by substantial evidence. McCool, Jr. testified that after he and Carole spoke with their son, they could not agree on a course of action. Neither McCool, Jr. nor Paul ever asked Carole McCool to agree to a guaranty arrangement. When Carole was informed of the arrangement, she clearly expressed her opposition to her husband. She testified, however, that she felt powerless to stop the transaction. Although she may have assisted her husband by typing financial information onto the form provided by the bank, this action, when viewed in the context of the entire transaction, does not constitute consent.

Nonetheless, the bank argues that Carole McCool consented as a matter of law to the guaranty agreement because she knew her husband had agreed to it and she made no attempt to inform the bank of her disapproval. In essence, the bank argues that knowledge of a transaction is equivalent to consent thereto. This unique argument is without merit. RCW 26.16.030(2) specifically uses the word "consent" in determining when a gift of community property becomes a community obligation. We refuse to encroach on the province of the Legislature by judicially substituting a less restrictive knowledge requirement for a statutorily specified consent requirement. Not only would we do violence to a specific statute by adopting the bank's analysis, we would also undermine a core purpose of the community property laws. The bank's interpretation would

enable one spouse to give away an entire estate in derogation of the interest of the nonacting spouse who knew of but felt powerless to halt the transfer. Thus, we adhere to the legislatively pronounced consent requirement. Because the trial court's finding of lack of consent is amply supported by the record, we affirm that determination.

Nichols Hills Bank next maintains that even if this court finds that Carole McCool's actions did not constitute consent, the community has nonetheless incurred a debt to the bank because Carole McCool authorized and ratified her husband's transaction. Because the concepts of authorization and ratification are analytically distinct, they will be explored separately.

█ Essentially a species of consent, authorization occurs when one spouse, prior to the initiation of a transaction, indicates his willingness to allow the other to enter into a transaction. *See Short v. Dolling,* 178 Wash. 467, 475, 35 P.2d 82 (1934). We have consistently held, however, that the delegation of authority to manage community property does not cloak the managing spouse with authority to enter into a transaction that specifically requires the involvement of both parties. *Marston v. Rue,* 92 Wash. 129, 131, 159 P. 111 (1916); *Benedict v. Hendrickson,* 19 Wn.2d 452, 455, 143 P.2d 326 (1943). Thus, although Carole McCool may have authorized her husband to manage their community assets, she did not provide him with the authority to enter into the guaranty agreement with the bank.

Nichols Hills Bank cites *Daily v. Warren,* 16 Wn. App. 726, 558 P.2d 1374 (1977)[2] to support its contention that Carole McCool authorized her husband to enter into a guaranty agreement. The facts of that case, however, are

---

[2]*Daily v. Warren,* 16 Wn. App. 726, 558 P.2d 1374 (1977) involved the purchase of real property under a statute which requires that both spouses *join* in the transaction. RCW 26.16.030(5). The instant case involves a gift of community property under a statute which requires *consent* of both parties. However, the requirement of consent in a gift situation is essentially a joinder requirement. Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 789 (1974). Thus, an analogy to a real property transaction is appropriate.

easily distinguishable. In *Daily,* the husband entered into a purchase contract for a tavern without obtaining his wife's signature. In finding that the wife's manifestations of consent fulfilled the statutory joinder requirement, the court essentially focused on six indicia of participation and approval: (1) the wife knew that the husband was interested in purchasing a tavern, (2) she inspected the tavern with an eye to approve or disapprove the transaction, (3) she had exercised her right to approve or disapprove in the past, (4) she specifically expressed approval, (5) she approved the use of community funds, and (6) she was well acquainted with the details of the transaction. *Daily,* at 731.

Here, prior to her husband's conversation with Paul, Mrs. McCool did not know he was entering into a guaranty arrangement. When she learned of the arrangement, she did not express approval. Nor did she approve the use of community funds. She had never vetoed a financial transaction of her husband's in the past and did not believe she could do so. Finally, she was not well acquainted with the details of the transaction. The facts of this case do not support the bank's contention that Mrs. McCool authorized the transaction.

Nichols Hills Bank argues that, even if Carole McCool did not authorize the transaction, her subsequent actions indicate that she ratified it. We have prohibited a spouse who does not initially consent to a transaction from disaffirming it if the spouse subsequently ratifies the transaction. *In re Horse Heaven Irrig. Dist.,* 19 Wn.2d 89, 96, 141 P.2d 400 (1943).

In developing the concept of ratification in community property law, this court has relied on cases relating to agency law. *See Geoghegan v. Dever,* 30 Wn.2d 877, 897, 194 P.2d 397 (1948), citing *Heinzerling v. Agen,* 46 Wash. 390, 90 P. 262 (1907). The analogy is appropriate because ratification in both the community property and agency contexts involves one party approving the unauthorized actions of another party. *See* Cross, 49 Wash. L. Rev. at

733, 789 (1974). In defining ratification, Restatement (Second) of Agency § 82 (1958) states:

Ratification is the *affirmance* by a person of a prior act which did not bind him but which was done or professedly done on his account . . .

(Italics ours.) *See also National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 495 P.2d 332 (1972).

█ Nichols Hills Bank maintains that Carole McCool affirmed the transaction by failing to repudiate it. Whether or not affirmance should be inferred from a failure to repudiate a transaction is a question of fact. Restatement (Second) of Agency § 94, comment *a* (1958). Here, Carole McCool testified that she did not contact the bank because she did not know she possessed the power to repudiate the transaction. In the context of an unauthorized gift of community property, we refuse to find affirmance from a failure to repudiate when the nonacting spouse opposes, but does not know she can repudiate, the transaction.

The bank maintains that Carole McCool ratified the agreement because not only did she fail to repudiate but she actually helped her husband by typing financial information onto the bank's form. This argument does not affect our conclusion because the typing was clearly done under protest. The facts relied on by the bank do not indicate that Carole McCool subsequently ratified the gift transaction.

█ The bank makes another related argument. It contends that Carole McCool should be estopped from denying community liability. To support its contention the bank cites *Campbell v. Webber,* 29 Wn.2d 516, 188 P.2d 130 (1947), and analogizes the facts of that case to the instant case. Unfortunately, the bank omits the legal test for estoppel articulated by the court in *Campbell.* "[A]n estoppel may be successfully urged against a wife who, by her acts, leads purchasers into a false position, to their detriment."[3] *Campbell,* at 522.

---

[3] A review of our previous community property decisions reveals that we have

*Campbell* involved a sale of real property. Although the wife did not sign the earnest money agreement, the court ordered specific performance. The court issued the decree because the wife attended sale negotiations and indicated to the purchasers her willingness to abide by her husband's decision. *Campbell,* at 524. Here, Carole McCool's actions did not lead the bank into a false position to its detriment, and estoppel is not applicable.

Having found no authorization, ratification, consent or basis for estoppel, we conclude that the debt to the bank is not an obligation of the McCool community.

## II

Nichols Hills Bank next argues that, even if we find that the debt is not a community liability, we should expand our holding in *deElche v. Jacobsen,* 95 Wn.2d 237, 622 P.2d 835 (1980), and allow the bank to reach the husband's one–half interest in the community property. Because of the specific legislative mandate contained in RCW 26.16.030(2) and the basic principles underlying the community property concept, we refuse to allow a creditor to reach the community property interest of a spouse who makes an unauthorized contractual gift of that property.

A brief review of our prior decisions in this area is helpful. Early Washington cases concluded that the community was a separate entity, and as such actually owned all community property. *Schramm v. Steele,* 97 Wash. 309, 315, 166 P. 634 (1917); *Stockand v. Bartlett,* 4 Wash. 730, 31 P. 24 (1892). In managing the community property, the

---

not always used the term "estoppel" synonymously with the detrimental reliance meaning given to the term in *Campbell v. Webber,* 29 Wn.2d 516, 188 P.2d 130 (1947). Instead of analyzing authorization and ratification as a species of consent, we have used the equitable principle of estoppel to prevent a spouse from challenging a transaction when it has been previously authorized or ratified by him. *See, e.g., Konnerup v. Frandsen,* 8 Wash. 551, 36 P. 493 (1894); *Benedict v. Hendrickson,* 19 Wn.2d 452, 453, 143 P.2d 326 (1943). Because we have already engaged in an analysis of authorization and ratification, we confine our estoppel analysis to its narrow detrimental reliance meaning.

husband[4] was considered to be the statutory agent for the community, and the community was liable for the acts of its agent husband under the theory of respondeat superior. *Schramm,* at 313, 316.

The "entity" theory of community property was short lived. *Bortle v. Osborne,* 155 Wash. 585, 285 P. 425, 67 A.L.R. 1152 (1930). In abolishing the "entity" theory, the *Bortle* court reasoned that "the legislature did not create an entity or a juristic person separate and apart from the spouses composing the marital community." *Bortle,* at 589. The court concluded that each spouse has an undivided one–half interest in community property. *Bortle,* at 589. Although we continue to recognize that each spouse has such an interest, we did not allow, until *deElche,* a third party to reach a spouse's one–half interest in community property to satisfy a separate obligation. *See, e.g., Newbury v. Remington,* 184 Wash. 665, 52 P.2d 312 (1935). In *deElche,* we departed from prior case law and allowed a tort victim to recover a tortfeasor's one–half interest in community property despite the separate nature of the tort. We explained that:

> Without the entity theory the question becomes why property *owned by a person* should be exempt from tort judgments. We can see no sufficient reason, *given the harm which results therefrom.*

(Italics ours.) *deElche,* at 244.

Nichols Hills Bank argues that because the *deElche* court premised the change in the rule of separate tort recovery on the concept of present individual ownership, the community property interest of a spouse should also be subject to separate contractual debts. In *deElche,* we created an exception to the general rule barring recovery of community property for separate obligations, because we found that, in the tort context, no statute prevented reach-

---

[4]Prior to 1972, the Legislature conferred the power to manage community property on the husband. Under the 1972 amendments to the community property laws, either spouse can manage community property. RCW 26.16.030.

ing the spouse's interest and considerations of equity favored that result. *deElche,* at 244. Here, the statute and policy considerations dictate that we protect the community against unauthorized contractual gifts of a spouse.

RCW 26.16.030(2) specifically requires the consent of both spouses before a gift of community property can be effectuated. If we found that a creditor could reach the donor spouse's one–half interest in community property, the total amount of that property would be diminished. We would, in effect, be defying the statutory mandate by allowing the community estate to be gratuitously reduced without the consent of both spouses.

Furthermore, application of *deElche* here would undermine the basic policy considerations underlying the community property concept. To hold that each spouse has an immediate possessory interest in community property would substitute a species of common law cotenancy for the community property concept. 57 Wash. L. Rev. 211 (1981). The legislative policy of protecting an innocent spouse would be circumvented.

In *deElche,* we found that the countervailing interest of compensating an innocent tort victim was sufficiently strong to override the interest in protecting the marital community. In the instant case, however, both parties entered into the guaranty agreement voluntarily and had a measure of control over the legal consequences of their acts. 57 Wash. L. Rev. at 220. Thus, because of the minimal countervailing policy considerations and the specific statutory mandate, we decline to extend the holding of *deElche* to a transaction involving a contractual gift of community property.

### III

Finally, Nichols Hills Bank contends that the suretyship agreement did not exempt the McCool family home from a judgment lien. We need not reach this issue, however, because the trial court found, and the finding is uncontested here, that the family home is community property.

Because we find that the bank cannot reach any of the McCool community property, it cannot reach the family home.

The trial court judgment dismissing the claim against the marital community is affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.