Bonita G. HILLIARD, in her capacity as Trustee of The H. David and Bonita G. Hilliard Living Trust, Appellant–Plaintiff,

v.

Timothy E. JACOBS, Appellee–Defendant.

No. 28A04–1106–CT–284.

Court of Appeals of Indiana.

Dec. 6, 2011.

Rehearing Denied Feb. 17, 2012.

Edward W. Harris III, Abram B. Gregory, Taft Stettinius & Hollister, LLP, Indianapolis, IN, Attorneys for Appellant.

Peyton L. Berg, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Appellee.

### OPINION

VAIDIK, Judge.

#### Case Summary

Bonita Hilliard appeals the trial court's decision to grant summary judgment in favor of Timothy Jacobs in this attempted second lawsuit over the disposition of life insurance policy proceeds. We find that res judicata applies since the issues have already been decided adversely to Hilliard. We also find Hilliard's due process and fundamental fairness concerns to be without merit. Finding no error in the trial court's ruling, we affirm the granting of summary judgment in favor of Jacobs.

#### Facts and Procedural History

This action is the latest installment in an ongoing series of legal proceedings concerning the disposition of life insurance policies. This case has spanned eight years, with proceedings in this Court, the Indiana Supreme Court, the Monroe Circuit Court, the Greene Circuit Court, and the Greene Superior Court. We, however, recite the facts relevant only to this appeal.

Jacobs and Hilliard's husband, David, were business partners from 1997 until they sold their company in 2002. In 1999 they executed a Cross–Purchase Agree-

ment that required each of them to take out a life insurance policy on the other so that if one partner died, the other could use the proceeds of the insurance policy to buyout the other's interest in the company. After the sale of the company in 2002, David suggested that he and Jacobs swap the insurance policies that they held on each other's lives. Jacobs declined and continued paying the premiums, but David stopped paying the premiums for the policy on Jacobs' life.

David filed the first lawsuit in January 2003, requesting that the trial court order Jacobs to terminate the policy or convey it to David. He allegedly feared for his life during the litigation of the first lawsuit, so he did not assert all of his theories of relief so that he could have a speedy resolution. Appellant's Br. p. 23–24. The theories that he did assert were based on the Cross–Purchase Agreement, which he argued required that the life insurance policies be terminated upon dissolution of the business. *Jacobs v. Hilliard*, 829 N.E.2d 629, 632 (Ind.Ct.App.2005), *trans. denied*. The trial court granted summary judgment in favor of David, requiring Jacobs to terminate the policies that he held on David's life. *Id.* at 631. Jacobs appealed the trial court's ruling in April 2004 and David died in July 2004. On appeal, we reversed and remanded the case, holding that nothing in the Cross–Purchase Agreement or in equity required Jacobs to terminate the policies that he held on David's life. *Id.* at 634.

On remand, Hilliard filed a motion for leave to file a third amended complaint that asserted seven more theories of recovery—nearly identical to the theories asserted in this second lawsuit. The trial court denied Hilliard's motion.[1] *Hilliard*

*v. Jacobs*, 927 N.E.2d 393, 397 (Ind.Ct. App.2010), *trans. denied*. Jacobs filed a motion for summary judgment, which was granted. *Hilliard v. Jacobs*, 874 N.E.2d 1060, 1063 (Ind.Ct.App.2007), *trans. denied*. Hilliard appealed the granting of summary judgment, and we again held that Jacobs was entitled to the insurance policies; the Cross–Purchase Agreement only required that the life insurances policies no longer had to be maintained after the sale of the company, not that they be terminated, *id.*, and Jacobs only needed to have an insurable interest in David's life when the policy was issued, which he did have as his business partner. *Id.* at 1065.

Hilliard filed this second lawsuit in October 2008 in a different court, attempting to re-litigate the disposition of the life insurance policy and asserting previously-stricken claims based on the same facts and transaction as the first lawsuit. Hilliard asserted breach of contract, breach of fiduciary duty, constructive fraud, promissory estoppel, and quasi-contract. Appellant's App. p. 4–17. She filed an amended complaint in December 2010, adding two additional counts: criminal conversion and a request for declaratory judgment. *Id.* at 24–43. All of these claims suggest that Jacobs was in violation of the Cross–Purchase Agreement, that Jacobs had deceived David in order to retain possession of the life insurance policy, and that Jacobs was taking property that did not belong to him. These theories of relief, like the ones in the first lawsuit, were again centered around the language of the Cross–Purchase Agreement, as well as the interpretation of oral agreements between Jacobs and David and the question of who was the rightful owner of the policies—

---

1. She would later unsuccessfully appeal this denial; in 2010, we determined that it was not an abuse of the trial court's discretion to deny Hilliard leave to file her third amended complaint. *Hilliard*, 927 N.E.2d at 401.

issues that have already been resolved in previous litigation.

Jacobs filed a motion for summary judgment later in December 2010. The trial court granted Jacobs' motion for summary judgment in May 2011, finding that "the issues raised in this case have already been decided, adversely to Plaintiff." *Id.* at 208.

Hilliard now appeals.

### Discussion and Decision

Hilliard contends that the trial court erred in granting summary judgment in favor of Jacobs. When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C);[2] *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind.2009). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the non-moving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007).

Hilliard makes multiple arguments against the trial court's granting of summary judgment, which we consolidate and restate as: (1) whether res judicata applies and (2) whether undue delay and prejudice support summary judgment in favor of Jacobs.

### I. Res Judicata

 Hilliard contends that res judicata does not apply in this case and the trial court erred in not giving her the opportunity to adjudicate her second set of claims.

Res judicata serves to prevent repetitious litigation of disputes which are essentially the same. *MicroVote General Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 191 (Ind.Ct.App.2010). The doctrine of res judicata consists of two distinct components: claim preclusion and issue preclusion. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind.Ct.App.2003). Claim preclusion applies when a final judgment on the merits has been rendered in a prior action, and it acts to bar a subsequent action on the same claim between the same parties. *MicroVote*, 924 N.E.2d at 191. Claim preclusion applies when the following four factors are satisfied:

1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Id.* Hilliard argues that the record does not support a finding that the third element of res judicata is satisfied, namely that the matters now in issue could not have been determined in the prior action. We disagree.

### A. Identical Evidence Test

 This Court recently discussed this third element of res judicata, stating that "the most critical question for the application of res judicata is whether the present claim was within the issues of the first or whether the claim presents an attempt to split a cause of action or defense." *Micro-Vote*, 924 N.E.2d at 192 (citing *Biggs v.*

---

2. Hilliard also argues that summary judgment is precluded under Indiana Trial Rule 56(C) because there is a genuine issue of material fact and Jacobs is not entitled to judgment as a matter of law. We reject this argument, as res judicata supports the granting of summary judgment in favor of Jacobs.

*Marsh,* 446 N.E.2d 977, 982 (Ind.Ct.App. 1983)). The test generally used for determining whether or not the issue could have been decided previously is the identical evidence test: "whether identical evidence will support the issues involved in both actions." *Id.*

■ Hilliard argues that the result of the identical evidence test shows that the evidence used to adjudicate her two sets of claims is different. In making this argument, she relies heavily on *Biggs.* In *Biggs,* after their first claim failed, this Court allowed the Biggses to bring a second claim against homeowners when their purchase agreement fell through and the home was sold to a third party. 446 N.E.2d at 982. This Court held that the first claim for specific performance of the purchase agreement required different evidence than the second set of claims for fraud, negligence, and tortious interference with a contract, preventing the invocation of res judicata. *Id.*

Hilliard would have us follow *Biggs* and take a literal interpretation of the identical evidence test, which has since been called into question by the Seventh Circuit. In *Atkins v. Hancock County Sheriff's Merit Board,* the Seventh Circuit noted that Indiana follows the identical evidence test, as is outlined in *Biggs.* 910 F.2d 403, 405 (7th Cir.1990). The court went on to say "[u]nderstood literally, that approach would confine a plea of res judicata to cases in which the claim in plaintiff's second suit was identical to the claim in his first, and would invite piecemeal litigation with a vengeance. We have not thought that Indiana intended to confine res judicata so narrowly...." *Id.* Hilliard's argument is centered around the idea that we should apply the literal interpretation of this test; she contends that some evidence necessary to adjudicate her second set of claims was not before the trial court in her

first set of claims, preventing the invocation of res judicata. However, we find this argument unpersuasive.

Applying a practical interpretation of the identical evidence test, the claims at issue in the present case could have been adjudicated in the first case. Even though individual pieces of evidence may differ between the two sets of claims, such as evidence of Jacobs' insurable interest in David's life for the first set of claims and the oral agreements between the parties in the second set of claims, the same general evidence would be used to adjudicate all of Hilliard's claims, such as the Cross–Purchase Agreement and the insurance policy itself. Furthermore, all of this evidence was available from the beginning of this litigation; Hilliard's claims all sought the same ultimate relief and there is no claim in the second case that could not have been adjudicated in the first case. All of the legal theories of relief she puts forth in both sets of claims should have been adjudicated at once. Choosing to withhold evidence and theories of relief should not be the basis for allowing Hilliard another "bite at the apple."

■■ Furthermore, we reject Hilliard's argument because it was the conscious decision of her and her husband not to set forth all of the evidence and legal theories they had. A party cannot fail to introduce evidence in the first case and then later claim that the excluded evidence is necessary for the second case, barring res judicata under the identical evidence rule. "[A] party who neglects to put in the evidence that would support the withheld legal theory cannot later point to its own omission as justification for filing another suit. Such an approach would gut the rules of preclusion." *Wabash Valley Power Ass'n v. Rural Electrification Admin.,* 903 F.2d 445, 456 (7th Cir.1990) (internal citations omitted). Allowing Hilliard's

claims to continue would be allowing her the possibility of endless litigation over the life insurance policies—as long as she withheld some piece of evidence or some legal theory, she could attempt to litigate her claims again until she got a ruling in her favor. This would completely eviscerate the doctrine of res judicata.

We therefore reject Hilliard's arguments under the identical evidence rule.

### B. Claim Splitting

█ Hilliard's claims are also barred by res judicata because through withholding legal theories of relief and evidence, she has engaged in claim splitting in an effort to allow herself another chance to litigate her claims. Claim splitting is a prohibited practice in Indiana, with this Court recently holding that "a party is not allowed to split a cause of action, pursuing it in a piecemeal fashion and subjecting a defendant to needless multiple suits." *MicroVote*, 924 N.E.2d at 192. Additionally, "multiple legal theories supporting relief on account of one transaction must be litigated at one go." *Quimby v. Becovic Mgmt. Group, Inc.*, 946 N.E.2d 30, 33 n. 4 (Ind.Ct.App.2011) (quoting *Wabash Valley Power Ass'n*, 903 F.2d at 455), *reh'g denied.* Therefore, Hilliard would have been required to assert all of the claims involved in her second complaint at the time of her first lawsuit, as they all arose out of the same transaction—the disposition of Jacobs' life insurance policies—and were available when the first complaint was filed.

Hilliard argues that this prohibition against claim splitting does not apply to this case because the two sets of claims were completely different. We reject this argument. Both lawsuits have been centered around the disposition of the same life insurance policies. In the first lawsuit, Hilliard argued that there was no insurable interest, and in the second lawsuit, she argued breach of contract, breach of fiduciary duty, constructive fraud, promissory estoppel, quasi-contract, criminal conversion, and a request for declaratory judgment. Appellant's App. p. 24–43. While the legal theories advanced have changed, the facts being litigated and the ultimate goal have remained exactly the same—Hilliard is seeking to have Jacobs return the proceeds of the life insurance policies so that he cannot profit from them. *Id.* at 41–42. After a close examination of the claims, we therefore conclude that this is a clear example of claim splitting and that the two lawsuits seek an identical end result that has already been determined by this Court; the avenues of getting to that result have just been altered in an attempt to receive a more favorable ruling the second time around.

Hilliard also argues that her husband feared for his life, which is why he did not assert all of his theories of relief during the initial lawsuit. This argument is similarly unpersuasive. As *Quimby* makes clear, the law demands that all legal theories of relief be asserted at one time. Regardless of the logic behind the reasons for withholding certain legal theories, this Court has made it clear that engaging in that type of litigation strategy will trigger res judicata and prevent a second attempt at adjudication and receiving a ruling in a party's favor. Claim splitting, regardless of the reason for it, is not allowed in Indiana courts.

We therefore find that summary judgment was appropriate because res judicata bars this second lawsuit.

### II. Due Process and Fundamental Fairness

█ Hilliard also contends that the constitutional guarantees of due process and fundamental fairness require this Court to reverse the trial court's grant of summary

judgment. Finding that Hilliard has had a full and fair opportunity to litigate her claims, we disagree.

Hilliard is correct in saying that the constitutional guarantee of due process ensures her the opportunity to litigate her claims; the Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, as discussed above, she has already been afforded due process of law in litigating this matter. This second lawsuit is merely an attempt to re-litigate the same issues from the first lawsuit in order to obtain a favorable result this time. Hilliard was not denied any constitutional guarantee when the trial court granted summary judgment in favor of Jacobs because the first lawsuit afforded Hilliard her day in court to resolve these claims. We therefore find this argument without merit and affirm the trial court's grant of summary judgment.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.