## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 01 2019, 5:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan H. Babb
Timothy J. O'Hara
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William A. Ramsey
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mohammed Nadeem,

*Appellant-Respondent,*

v.

Shahidatul Akmal Abubakar,

*Appellee-Petitioner.*

April 1, 2019

Court of Appeals Case No.
18A-DR-524

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

The Honorable Sherry A. Hartzler, Magistrate

Trial Court Cause No.
02D07-1212-DR-957

**Najam, Judge.**

# Statement of the Case

Mohammed Nadeem ("Father") appeals the dissolution court's order modifying his child support obligation. Father raises two issues for our review, which we revise and restate as the following:

1. Whether the dissolution court was barred by the doctrine of *res judicata* from redetermining Father's job position and income.

2. Whether the dissolution court erred when it calculated Father's child support obligation based on its allegedly erroneous determination of his job position and income.

We affirm.

# Facts and Procedural History

Father and Shahidatul Akmal Abubakar ("Mother") were married on December 9, 1992. Father and Mother have five children together: O.N., born November 19, 1993; Sh.N., born July 6, 1996; S.N., born March 26, 1990; F.N., born June 1, 2002; and M.N., born July 16, 2008. In 2007, Father began working as the CEO for a company called Paharpur 3P ("Paharpur") in India. Father divided his time between India and Indiana, spending three weeks per month in India and one week per month in Indiana with Mother and their children. As the CEO, Father's base salary was $150,000 per year. In addition to his salary, Paharpur paid for many of Father's living expenses in India and Father's trips to Indiana.

[4]     On December 27, 2012, Mother filed a petition for dissolution of the marriage. After Mother filed the petition to dissolve their marriage, Father informed Mother that he had previously resigned as Paharpur's CEO and that he was employed as an advisor to the CEO with a salary of $80,000 per year with no bonuses or other perks.

[5]     Following a hearing, the dissolution court issued its dissolution decree on July 1, 2014, in which it valued and divided the estate and determined Father's child support obligation. In relevant part, the dissolution court entered the following findings and conclusions:

> 63. On or about September 1, 2011, [Father] commenced employment with Paharpur-3P as Chief Executive Officer (CEO) with a base salary of One Hundred Fifty Thousand Dollars ($150,000.00) per year plus bonuses. In 2012, [Father] earned One Hundred Ninety[-]Two Thousand Dollars ($192,000.00) while working for Paharpur-3P for 11 months.
>
> 64. Paharpur-3P also paid [Father's] living expenses in India and transportation expenses between Fort Wayne and India.
>
> 65. [Father] resigned as CEO of Paharpur-3P on November 29, 2012. [Father] testified that he resigned due to the stress from his marriage. [Father] also testified that his employer asked him to resign due to his emotional/mental health at that time.
>
> 66. [Father] was rehired by Paharpur-3P effective February 1, 2013[,] as Advisor to Chief Executive Officer at Eighty Thousand Dollars ($80,000.00) per year with no benefits. [Father] has continued to work for Paharpur-3P as an Advisor since that date.

67. Since February 1, 2013, [Father] has been responsible for the payment of his living expenses in India and travel expenses between Fort Wayne and India. [Father's] travel schedule between Fort Wayne and India has remained essentially the same in his role as Advisor for Paharpur-3P.

68. Paharpur-3P has not hired an individual to replace [Father] as CEO, although various individuals have assumed some of [Father's] job responsibilities as CEO.

69. Records from Paharpur Industries and Floeter India reflect that [Father] is still listed as a Managing Director. The 2014 National Packing Exhibition [a]nd Conference listed [Father] as CEO of Paharpur-3P.

70. It is [Mother's] contention that Paharpur-3P is in some way deferring or hiding compensation for [Father].

71. Based on [Father's] employment history there is a reasonable question of why he would work at Eighty Thousand Dollars ($80,000.00) per year, incur monthly international travel expenses between Fort Wayne and India, living expenses in Fort Wayne, and living expenses in India.

72. A review of [Father's] Financial Declaration (Exhibit E) reflects that after payment of India taxes and expenses related to India, [Father's] net monthly income is One Thousand Two Hundred Dollars ($1,200.00).

73. There is a reasonable question as to why Paharpur-3P would ask [Father] to resign as CEO on November 29, 2012, and hire him as Advisor to CEO on February 1, 2013.

74.  There is a reasonable question as to why Paharpur Industries and Floeter India would file reports to the Indian Government after [Father] resigned as CEO stating that he is a Managing Director.

75.  There is a reasonable question as to why [Father] was listed as CEO of Paharpur-3P for the 2014 National Packing Exhibition [a]nd Conference.

76.  Based on the record the Court finds that [Father's] weekly gross income for purposes of child support shall be based on his annual salary as Advisor to CEO of Paharpur-3P of Eighty Thousand Dollars ($80,000.00).

Appellant's App. Vol. II at 61-62.  Accordingly, the dissolution court ordered Father to pay $393.00 per week as support for his minor children.

[6]  Father appealed the dissolution court's dissolution decree.  On appeal, Father asserted that the dissolution court had abused its discretion when it:  (1) valued the marital asset as of the date Mother filed the petition for dissolution instead of the date of the dissolution hearing; (2) awarded Mother sixty percent of the marital estate; and (3) ordered Father to pay a portion of Mother's attorney's fees.  *Nadeem v. Abubakar*, No. 02A04-1407-DR-343, 2015 WL 4105029, at *1 (Ind. Ct. App. July 8, 2015) ("*Nadeem I*").

[7]  On appeal, this Court held the dissolution court did not abuse its discretion when it had decided to value the accounts awarded to Father as of the date Mother filed the petition for dissolution because "the reasons these accounts were depleted was due to Father's questionable resignation of his position as

CEO and his decision to maintain a family lifestyle that his reduced level of compensation could not support[.]" *Id*. at *6. Further, this Court held that the dissolution court did not abuse its discretion when it had awarded Mother sixty percent of the marital estate because Father's "income, even though currently $80,000, has the potential to be and was in the recent past nearly twice that amount, with many expenses attendant to his employment fully paid by his employer." *Id*. at *9. Finally, this Court held that the dissolution court did not abuse its discretion when it had ordered Father to pay a portion of Mother's attorney's fees because Father "has demonstrated the ability to earn significantly more than his current $80,000 per year salary," while Mother only earned eight dollars per hour at the time of the final dissolution hearing. *Id*. at *10. Accordingly, this Court affirmed the dissolution court. *Id*.

[8]     On April 28, 2015, ten months after the dissolution decree and before our decision in *Nadeem I*, Father filed a motion to modify his child support obligation. Specifically, Father asserted that Sh.N. was going to be nineteen years old on July 6 and that Sh.N.'s birthday represented a substantial change of circumstances that warranted the modification of his child support obligation.

[9]     The dissolution court held a hearing on Father's motion to modify child support and numerous other petitions and motions that the parties had filed.[1]

---

[1] The dissolution court held hearings over ten dates regarding Father's motion to modify child support and the various other motions and petitions that the parties had filed.

During the hearing, Mother presented evidence regarding Father's job position and income. Following the hearing, the dissolution court entered detailed and extensive findings of fact. In relevant part, the dissolution court entered the following findings and conclusions:

V. Findings Regarding Child Support

* * *

171. In 2007, [Father] began to work for Paharpur 3P ("Paharpur"), where he was the managing director/chief executive officer ("CEO").

172. After 2011, Father's employment was divided between time in India and time in Indiana.

173. Father typically spent three (3) weeks per month in India and one (1) week per month in Fort Wayne.

174. As CEO, Father's base salary was approximately $150,000 per year. In addition, Paharpur paid many of Father's expenses in India, including a car and driver, housing, and regular trips between India and Fort Wayne.

175. Prior to the parties' separation, Father's position as CEO resulted in compensation to Father of approximately $209,000 per year, plus significant benefits, including payment of travel expenses between India and the United States and costs of living while in India.

176. Father claims to have resigned as CEO on November 29, 2012, due to stress and other factors, and to have been rehired as

Advisor to the CEO on February 1, 2013, for which he claims to be paid $80,000 per year and receive no benefits.

177.  Father's testimony that he is not currently the CEO of Paharpur is not credible.

178.  Father claims to be the Advisor to the CEO, yet Paharpur did not hire a CEO to replace Father.  The Court finds that over three years have passed since the Decree of Dissolution and Father still claims to be working as the Advisor to the Office of CEO.

179.  Because Paharpur does not have a CEO, Father's claim that he is and has been the advisor to the CEO is not credible.  The Court distinguishes this from the conclusions in the Decree of Dissolution based on findings herein concerning credibility, statements made to creditors since the Decree of Dissolution, observations concerning demeanor, and the passage of time since the Court's findings and conclusions in 2014.

180.  Father's LinkedIn profile identifies him as the CEO of Paharpur.

181.  Father speaks at seminars or conferences at which he is introduced as the CEO of Paharpur.

182.  Since the Decree of Dissolution, at the World Packaging Congress convention, which took place on October 9-10, 2015, Father was identified as an "Eminent Speaker," and listed as the CEO for Paharpur.  The conference materials specifically stated that Father "is Chief Executive Officer of Paharpur 3P," and that "In 2011, he accepted the current position with Paharpur 3P."

183. Since the Decree of Dissolution, Father spoke at the National Conference on Packaging for Better Living, which took place on February 19-20, 2016, and was listed as Paharpur's CEO.

184. Since the Decree of Dissolution, Father spoke at the 5th Specialty Films and Flexible Packaging Global Summit, on September 21, 2016, and was identified as Paharpur's CEO.

185. Currently, Father is the managing director of Paharpur and completes financial, auditing, and government forms on behalf of the company.

186. In 2013, at the time this Court issued its final Decree of Dissolution, there were *reasonable questions* as to why Paharpur would ask Father to resign as CEO and then rehire him as Advisor to the CEO, why Paharpur would have an Advisor to the CEO when the company has no CEO, and why Father would appear at conferences as the CEO if he were not the CEO. (emphasis added).

187. There is even more reason to question Father's testimony that he is not currently the CEO. The Court finds that given the recent conferences at which he has appeared as CEO, it is simply not credible to believe that Paharpur would represent to its industry peers that Father is Paharpur's CEO if, in fact, Father is not the CEO.

188. The Court does not [find] that Father's testimony regarding his current position with Paharpur is credible and find[s] that he is the CEO of Paharpur.

189. The Court finds that Father's salary is not what he claims it to be.

* * *

232. On March 14, 2015, Father submitted an application to Don Ayres Honda, in which Father stated that his monthly income was $16,667, which equates to approximately $200,004 per year.

233. March 14, 2015, falls during the time period that Father claims to have been making only $80,000 per year, without benefits.

234. It is not reasonable to believe that Father would provide false information regarding his income to a company that would be extending him credit and could be expected to ask him to verify his income.

* * *

VI. Conclusions Regarding Child Support

* * *

260. The Court does not find Father's testimony that he earns an annual income of $80,000 to be credible.

261. Considering the issue of credibility, the Court concludes that Father has held himself out to be the CEO of Paharpur since this Court's entry of the Decree of Dissolution and has accepted awards as the "CEO" of Paharpur.

262. The Court further concludes that Father has represented in his application for credit with Don Ayres Honda that his statements were "true, correct and complete" that he makes the

sum of $16,667.00 per month. In light of the totality of the evidence, the Court finds that Father's statements in this regard are credible. The Court further concludes that as Father did not dispute that he indeed signed the application for credit and made the aforementioned statements, his statements are credible.

* * *

264. The Court further notes that at the time of the Dissolution proceedings there existed "reasonable question" as to why Paharpur would ask Father to resign as CEO and then rehire him as Advisor to the CEO; reasonable question why Respondent would work at Eighty Thousand Dollars per year, incur monthly international travel expenses between Fort Wayne and India, living expenses in Fort Wayne, and living expenses in India; reasonable question why Respondent would resign as CEO with Paharpur rehiring him as Advisor to the CEO; reasonable question as to why Paharpur would file reports to the Indian Government stating Father was the Managing Director; and reasonable question why Father was listed as the CEO for the National Packaging Exhibition and Conference.

265. Further the Court concludes that Father alleges that Paharpur does not have a CEO still three years after the entry of the Decree of Dissolution, and that he "advises" the Office of the CEO pursuant to his contentions.

266. Father's contentions that he is not the CEO of Paharpur are not credible.

267. The Decree of Dissolution and the Court of Appeals both concluded that "Father's income, even though currently $80,000, has the potential to be and was in the recent past nearly twice that amount, with many expenses attendant to his employment fully paid by his employer."

268. The Court concludes that the "reasonable question" is resolved as matter of fact and law and thus the Court concludes that Father's annual income for child support purposes is $200,004.00 as represented in his credit application to Don Ayres Honda.

Appellant's App. Vol. II at 108-17 (citations and footnote omitted). After numerous hearings spanning several months, the dissolution court amended Father's child support obligation as of July 6, 2015, and ordered Father to pay $534.00 per week. Thereafter, the dissolution court determined that Father owed $35,372.96 in child support arrearage. This appeal ensued.

# Discussion and Decision

## *Issue One:* Res Judicata

[10] Father first contends that the dissolution court erred when it recalculated his child support obligation because the court was barred by *res judicata* from redetermining his job position and income. Specifically, Father contends that "the amount that [he] had previously made as CEO of Paharpur ($200K+) had already been fully considered by [the dissolution court] in nevertheless finding that [he] had transitioned to the [position of] advisor to Paharpur's CEO making $80,000 per year." Appellant's Br. at 15-16. He further contends that his job position and income "were somehow now being reconsidered and decided differently in 2017 by a different factfinder." *Id*. at 16. Accordingly, Father contends that his "judicial promotion, and corresponding new $200,004 annual salary amount, are both grounded in determinations previously adjudicated in the Final Decree, which the trial court re-found by considerin[g]

similar evidence." *Id.* In essence, Father contends that "*res judicata* prevented the trial court from re-determining on this record in 2017 his job position and corresponding salary" that the dissolution court and this Court on appeal had "just determined in 2014 on the same general type of evidence." *Id.* at 13.

"The doctrine of *res judicata* bars the litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies." *MicroVote General Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 191 (Ind. Ct. App. 2010). "The principal behind this doctrine, as well as the doctrine of collateral estoppel, is the prevention of repetitive litigation of the same dispute." *Id.* Whether the doctrine of *res judicata* applies is a question of law that we review *de novo*. *See M.G. v. V.P.*, 74 N.E.3d 259, 263 (Ind. Ct. App. 2017) ("The trial court . . . does not have discretion to ignore the doctrine of *res judicata*").

The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion. *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013), *trans. denied*. On appeal, Father asserts that both claim preclusion and issue preclusion barred the dissolution court from redetermining in 2017 his job position and corresponding income. We address each argument in turn.

## *Claim Preclusion*

Father first contends that claim preclusion barred the dissolution court from redetermining his job position and his income. Claim preclusion

applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. The following four requirements must be satisfied for claim preclusion to apply as a bar to a subsequent action: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Angelopoulos*, 2 N.E.3d at 696. Here, there is no dispute that the dissolution court's original dissolution decree was rendered by a court of competent jurisdiction, that it was rendered on the merits, and that it involved the same parties as the present matter. Rather, the parties only dispute whether the matter now in issue was, or could have been, determined in the prior action.

[14] The test generally used for determining whether or not the issue could have been decided previously is the identical evidence test: whether identical evidence will support the issues involved in both actions. *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1047. Indiana courts use a practical approach in determining whether identical evidence supports claims in separate cases. *See id*. That is, Indiana courts apply the identical evidence test to bar subsequent claims when those claims could have been brought in the original suit and when both suits are based on the same general evidence. *See id*.

Father asserts that the dissolution court was barred from redetermining his job position and income "because those issues were determined in the prior action using the same general type of evidence," namely, evidence of his place of employment, title, and income. Appellant's Br. at 23. Further, Father contends that Mother "did not present any new or materially different evidence" since the dissolution court issued the dissolution decree "to credibly support a re-determination of [Father's] job position and corresponding income[.]" *Id.* at 18. We cannot agree.

Rather, at the hearing on Father's motion to modify child support, Mother presented substantial and significant new evidence regarding Father's job position and income in 2017. In particular, Mother presented evidence that Father had spoken at three conferences since the date the dissolution court had issued the dissolution decree and, at those conferences, Father held himself out as the CEO of Paharpur. Mother also presented evidence of Father's LinkedIn profile from June 2016 in which Father had identified himself as the CEO of Paharpur. Further, Mother presented as evidence an automobile credit application that Father submitted on March 14, 2015, eight months after the dissolution court had dissolved the parties' marriage, in which Father stated that he earned $16,667 per month.

The issue of Father's income in 2017 was not, nor could it have been, adjudicated by the dissolution court in 2014 when it issued the dissolution decree. And Mother presented new evidence that was not available in 2014 that, since the dissolution of their marriage, Father has held himself out as the

CEO of Paharpur and that Father makes $16,667 per month. We therefore hold that claim preclusion does not apply.

*Issue Preclusion*

[18] Father next asserts that issue preclusion barred the dissolution court from redetermining his job position and income. As this Court has previously stated:

> Issue preclusion bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit *if the same fact or issue is presented in the subsequent lawsuit.* If issue preclusion applies, the former adjudication is conclusive in the subsequent action, even if the actions are based on different claims. The former adjudication is conclusive only as to those issues that were actually litigated and determined therein. Thus, issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument. In determining whether issue preclusion is applicable, a court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply issue preclusion given the facts of the particular case. The non-exhaustive factors to be considered by the trial court in deciding whether to apply issue preclusion include: (1) privity, (2) the defendant's incentive to litigate the prior action, and (3) the ability of the plaintiff to have joined the prior action

*Angelopoulos*, 2 N.E.3d at 696 (emphasis added). On appeal, Father asserts that "the non-exhaustive factors are easily satisfied as the same parties are arguing about the same issues using the same type of evidence: [Father's] job position and corresponding salary." Appellant's Br. at 28. Accordingly, Father asserts that "the trial court is also collaterally estopped from reaching a different

conclusion other than [Father] is the advisor to the CEO of Paharpur at a salary of $80,000.00 per year." *Id*. at 27.

[19] But we agree with Mother that the fact at issue before the dissolution court in 2017 was not the same fact that was at issue in 2014. Specifically, the question before the dissolution court in the present action was Father's job position and income at the time it held the hearing on Father's motion to modify child support, not Father's job position and income in 2014. Accordingly, issue preclusion does not apply.

[20] In sum, there is no dispute that the dissolution court had concluded that Father earned $80,000 as the advisor to the CEO in 2014. But, in the present action, the dissolution court was tasked with determining Father's income in 2017, which issue could not have been litigated in 2014. And the dissolution court considered new evidence that was not available at the time of the dissolution hearing to determine Father's job position and income at the time of the hearing on his motion to modify. Accordingly, we hold that *res judicata* does not apply, and the dissolution court was not precluded from considering the new evidence to determine Father's job position and income in 2017, three years after the dissolution court had issued its dissolution decree.

[21] As discussed above, *res judiciata* does not apply on the facts of this case. But we decline to adopt Mother's position that *res judicata* can never apply to child support orders. Indeed, we acknowledge that *res judicata* would have barred the dissolution court from redetermining Father's child support obligation as of

2014. *See, e.g.*, *Neese v. Kelley*, 705 N.E.2d 1047, 1052 (Ind. Ct. App. 1999) (holding that *res judicata* prohibited the trial court from reconsidering an issue decided four years earlier). And *res judicata* would have prevented the dissolution court from reconsidering Father's job position and income based only upon the same evidence upon which the dissolution court relied in 2014.

[22] However, the Indiana General Assembly has expressly provided that the provisions of an order with respect to child support may be modified upon a showing of changed circumstances so substantial and continuing as to make the terms of the order unreasonable or upon a showing that a party has been ordered to pay an amount that differs by more than twenty percent from the amount that would be ordered by applying the child support guidelines. *See* Ind. Code § 31-16-8-1 (2018). Accordingly, a child support order is not per se *res judicata* and may, upon a proper showing, be modified. And, here, Mother presented evidence to the dissolution court that was not available in 2014 to demonstrate that Father's employment and income had changed.

### Issue Two: Father's Salary

[23] Throughout his brief on appeal, Father contends that the dissolution court erred when it concluded that he was employed as the CEO of Paharpur with an annual income of $200,004. Where, as here, a dissolution court enters findings of fact and conclusions,

> we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. We

disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. The challenger must establish that the trial court's findings are clearly erroneous.

*Dedeck v. Dedeck*, 851 N.E.2d 1048, 1050 (Ind. Ct. App. 2006) (citations omitted). "Finding of fact are clearly erroneous when they have no factual support in the record." *Nichols v. Minnick*, 885 N.E.2d 1, 3 (Ind. 2008). And "[a] judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id*. "In conducting our review, we will not reweigh the evidence and will consider only the evidence most favorable to the judgment." *Salser v. Salser*, 75 N.E.3d 553, 559 (Ind. Ct. App. 2017).

[24] Father specifically contends that the dissolution court erred when it determined that he is the CEO of Paharpur because "the trial court's redetermination of [Father's] job position is expressly contradicted by other record evidence[.]" Appellant's Br. at 21. However, the evidence most favorable to the dissolution court's findings supports its conclusion that Father is the CEO of Paharpur. Again, during the hearing on Father' motion to modify child support, Mother presented as evidence Father's LinkedIn profile from 2016, which identified Father as the CEO of Paharpur. Mother also admitted evidence that Father had presented at three conferences at which he identified himself as the CEO of Paharpur. And the dissolution court found that evidence to be credible. Based on that evidence, the dissolution court concluded that "Father has held himself out to be the CEO of Paharpur since this Court's entry of the Decree of Dissolution and has accepted awards as the 'CEO' of Paharpur." Appellant's

App. Vol. II at 117. Father's contention on appeal that that evidence is contradicted by other evidence is simply a request for this Court to reweigh the evidence, which we cannot do. We therefore cannot say that the dissolution court clearly erred when it concluded that Father is the CEO of Paharpur.

[25] Further, it is well settled that, when a trial court enters findings and conclusions, we "may affirm the judgment on any legal theory supported by the findings." *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998). Here, even if the findings did not support the dissolution court's determination regarding Father's job position, the dissolution court's findings support its ultimate conclusion Father earns over $200,000 per year. Indeed, the dissolution court did not base its conclusion regarding Father's income on his job position or his employer. Rather, the dissolution court based its ultimate conclusion regarding Father's annual income on Father's credit application. Specifically, the dissolution court found that "Father's annual income for child support purposes is $200,004.00 as represented in his credit application to Don Ayres Honda." Appellant's App. Vol. II at 117.

[26] Additionally, while the dissolution court did not find that Father is voluntarily underemployed or otherwise impute income to him, had the dissolution court credited Father's testimony that he only earns $80,000 per year, the evidence and the findings would have supported a legal theory and conclusion that Father was voluntarily underemployed without just cause. *See Mitchell*, 695 N.E.2d at 923. Indeed, the dissolution court made numerous findings that would support a legal conclusion that Father is underemployed and that his

child support obligation should be calculated based on his potential income.[2] Specifically, the dissolution court found Father's testimony that he makes $80,000 per year to not be credible and that Father has previously "demonstrated the ability to earn $209,000 per year with Paharpur." Appellant's App. Vol. II at 116. And the dissolution court made several findings to indicate that Father has the potential to earn much more than $80,000 per year. Even though the dissolution court did not impute income to Father, the legal theory that Father is voluntarily underemployed without just cause was articulated in the dissolution court's findings, and we are confident that such a theory and conclusion are consistent with the dissolution court's findings and the inferences reasonably drawn therefrom. *See Mitchell*, 695 N.E.2d at 923-24. Thus, we conclude that, while the dissolution court ultimately based its child support order on Father's income as shown in the credit application, the findings also support the order based on Father's imputed income, and we may also affirm the order on that legal theory. *See id*. at 923.

[27] Still, Father further asserts that the dissolution court erred when it determined that his annual income is $200,004 based on the March 14, 2015, credit application. Specifically, Father contends that it was erroneous for the dissolution court to rely on the information contained in the credit application

---

[2] While Father did not raise the issue of imputed income in his initial brief, Mother addressed the issue of imputed income in her Appellee's Brief, and Father responded in his reply brief. Accordingly, "both parties expressed their view on the correct rule of law," and "there is no surprise and no risk of [this Court] introducing an unvetted legal theory." *Id*. at 924-25.

because the credit application was not "credible evidence" and because the information in the application "was undoubtedly taken from a period of time when [Father] had been employed by Terex in 2008." Appellant's Br. at 24, 25. To support his contention, Father relies on his own testimony that he did not discuss his employment or income with the dealership when he leased the car in 2015 but that the dealership already had his financial information in its records from when Father had previously purchased a vehicle.

[28] But at the hearing on the motion to modify, Mother presented as evidence Father's automobile credit application in which Father certified that his monthly income as of March 14, 2015, was $16,667 per month and represented that the information contained in the credit application was "true, correct[,] and complete." Ex. Vol. IV at 138. Based on the credit application and the fact that "Father did not dispute that he signed the application for credit and made the aforementioned statements," the dissolution court concluded that Father's statements in the credit application were credible and that Father's contrary testimony was not credible. Appellant's App. Vol. II at 117. Father's contentions on appeal are, again, simply a request that we reweigh the evidence, which we cannot do. Because there is evidence in the record, which Father submitted to a third party and which supports the dissolution court's finding that Father earned $16,667 per month, we cannot say that the dissolution court clearly erred when it concluded that Father's annual income is $200,004 per year.

## *Conclusion*

In sum, we hold that the doctrine of *res judicata* did not preclude the dissolution court from determining Father's income and job position in 2017 because Mother presented new evidence to the dissolution court that the dissolution court did not and could not have considered when it entered the dissolution decree in 2014 and because the fact at issue—Father's income in 2017—was not the same fact that was at issue when the court dissolved the marriage—Father's income in 2014. We further hold that the dissolution court did not err when it determined that Father is the CEO of Paharpur and when it determined that Father earns $200,004 per year because the dissolution court's findings are supported by evidence in the record.[3] We therefore affirm the dissolution court.

Affirmed.

Pyle, J., and Altice, J., concur.

---

[3] In an abbreviated argument, Father also asserts that the dissolution court erred when it calculated his child support arrearage "[b]ecause the arrearage order is moored in the trial court's erroneous re-adjudication of [Father's] job position and annual [income]." Appellant's Br. at 29. Because we hold that *res judiciata* did not prelude the dissolution court from determining Father's income in 2017 and that the dissolution court did not err when it determined his income, we cannot say that the dissolution court erred when it calculated his child support arrearage.