In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 19-2146

REXING QUALITY EGGS,

*Plaintiff-Appellant*,

*v.*

REMBRANDT ENTERPRISES, INC.,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:19-cv-00031 — **Jane Magnus-Stinson**, *Chief Judge*.

———————————

ARGUED DECEMBER 3, 2019 — DECIDED MARCH 26, 2020

———————————

Before WOOD, *Chief Judge*, and HAMILTON and SCUDDER, *Circuit Judges*.

WOOD, *Chief Judge*. This case is the second to arise out of an ill-fated relationship between Rexing Quality Eggs and Rembrandt Enterprises, Inc. The first case addressed various claims arising under a contract that the two parties formed at the outset of their business dealings. Although this case arises out of the same transaction, this time Rexing, the plaintiff, has raised tort claims. The question on appeal is whether its effort

to bring a new action is consistent with Indiana's prohibition on claim splitting, under which a plaintiff is forbidden to bring a case presenting claims that arise out of the same transaction or events that underlie claims brought in another lawsuit. We hold that the claim-splitting ban applies here, and so we affirm the district court's judgment.

**I**

Rexing and Rembrandt entered into a contract under which Rembrandt, a producer of eggs, promised to supply Rexing, a distributor, with 3,240,000 cage-free eggs every week for a year. Eight months after the agreement took effect, Rexing repudiated it, claiming that Rembrandt had breached its obligations by failing to provide eggs that met the quality standards specified in the agreement. Rexing refused to accept any more loads of eggs. In the aftermath, Rexing sued Rembrandt, seeking a declaration that it was excused from accepting any more eggs, as well as incidental and consequential damages for alleged breaches of warranty in the purchase agreement. *Rexing Quality Eggs v. Rembrandt Enterprises, Inc.*, 360 F. Supp. 3d 817 (S.D. Ind. 2018) (*Rexing I*). Rexing sought $67,261.50 in general damages, $60,204.84 in lost profits, and $997,650 in start-up costs.

Rembrandt counterclaimed, seeking damages for breach of contract. After discovery, both parties moved for summary judgment. The trial court determined that Rexing had unilaterally terminated the contract and that the breach was not excused. At the same time, it ruled that Rembrandt was not entitled to summary judgment on the question whether it was entitled to damages, and it allowed the case to move forward to trial on that issue. The district court held a trial in November 2019; it resulted in a jury verdict in Rembrandt's favor and

an award of $1,522,302.61 in damages against Rexing. Rexing filed a timely notice of appeal, but on January 2, 2020, it voluntarily dismissed the appeal pursuant to Federal Rule of Appellate Procedure 42(b). It appears that some post-verdict wrangling over attorney's fees and costs is still ongoing.

After its partial loss on summary judgment but before the trial in *Rexing I*, Rexing brought this action (*Rexing II*) in state court, one month after the district court ordered summary judgment in the first case. This time, Rexing sued Rembrandt for the torts of conversion and deception. Rexing claimed that Rembrandt had refused to return reusable shipping materials, including plastic flats, dividers, and pallets, collectively called the "EggsCargoSystem." Rexing had provided the EggsCargoSystem to Rembrandt to use in loading eggs for Rexing to pick up. The original contract called for Rexing to provide Rembrandt with the materials, but it did not require Rembrandt to return the EggsCargoSystem at the termination of the agreement. Nonetheless, Rexing made three demands that Rembrandt return the EggsCargoSystem. Rembrandt returned some, but not all, of the materials in November 2018. In *Rexing I*, Rexing had sought the value of the EggsCargoSystem as part of the start-up costs that it alleged it incurred in reliance on the original agreement with Rembrandt. Now, in *Rexing II*, Rexing seeks damages for the unreturned materials, as well as for the loss of the use of the EggsCargoSystem during the time that Rembrandt allegedly unlawfully possessed it.

Taking advantage of the fact that the parties were of diverse citizenship (Rembrandt is an Iowa corporation with its principal place of business in that state, and Rexing is an Indiana partnership whose only two partners are both citizens

of Indiana), and the amount in controversy easily exceeded $75,000, Rembrandt removed *Rexing II* to federal court and moved to dismiss the action. 28 U.S.C. §§ 1332(a)(1) & (c), 1441(b). It argued that the claims in *Rexing II* were barred by the claim-preclusion branch of *res judicata* in light of the district court's grant of partial summary judgment in *Rexing I*, and it contended that Rexing had improperly split its claims between the two cases.

The district court granted Rembrandt's motion to dismiss, ruling that, while the new case was not barred by claim preclusion, Rexing had impermissibly split its claims. Under Indiana's doctrine prohibiting claim splitting, a plaintiff cannot bring a new lawsuit based upon the same transaction or occurrence that underlies claims brought in another lawsuit. Because *Rexing I* and *Rexing II* both centered around the same controversy, the district court determined that Rexing had impermissibly split its claim and dismissed the case. Rexing appeals.

## II

Rexing offers three arguments why the rule against claim splitting should not apply to this case. First, it argues that the district court applied the wrong test under Indiana law for establishing claim splitting, and that it would have prevailed under the proper test. Second, it argues that claim splitting cannot prevent litigation of facts that were unknown at the time the original case was filed. Finally, it argues that the rule against claim splitting does not apply to continuing torts, and that conversion is a continuing tort under Indiana law. Each of these arguments fails, as discussed below.

A

Before addressing Rembrandt's arguments, we need to say a word about the law that applies to them. Rexing's position is a bit hard to follow, but it appears to argue that Indiana law applies because this is a substantive matter and that the district court deviated from Indiana's rules; it then expends considerable time arguing that the district court erroneously relied on *Telamon Corp. v. Charter Oak First Ins. Co.*, 2016 WL 67297 (S.D. Ind. 2016), *aff'd*, 850 F.3d 866 (7th Cir. 2017), when it resolved this issue. Rembrandt responds first that there is no material difference between Indiana law and federal law, and that it wins either way.

In fact, the district court approached this issue in the appropriate way. It first recognized that the law on claim-splitting is part of the law of *res judicata*. See *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011); *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008). It then noted that when a federal court is considering the effect of an earlier ruling in a case within its diversity jurisdiction, as *Rexing I* was, for purposes of claim preclusion "federal common law governs the … effect of a dismissal by a federal court sitting in diversity." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Nonetheless, the Supreme Court continued, the *content* of the federally prescribed rule should be taken from "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* Like the district court, we see no reason why this approach should not apply with equal force to the problem of claim-splitting. We therefore hold that the content of the law governing the effect of *Rexing I* comes from Indiana law, which is incorporated as

the applicable federal common law. Our references below to
Indiana law should be understood in this light.

The rule against claim splitting prohibits a plaintiff from
bringing a new case raising issues arising out of the same
transaction or occurrence as an earlier case, when those issues
could have been raised in the first litigation. Indiana law has
long recognized this prohibition. See *MicroVote Gen. Corp. v.
Indiana Election Comm'n*, 924 N.E.2d 184, 192 (Ind. Ct. App.
2010) ("[A] party is not allowed to split a cause of action, pur-
suing it in a piecemeal fashion and subjecting a defendant to
needless multiple suits."); *Quimby v. Becovic Mgmt. Grp., Inc.*,
946 N.E.2d 30, 34 n.4 (Ind. Ct. App. 2011) ("[M]ultiple legal
theories supporting relief on account of one transaction must
be litigated at one go.") (quoting *Wabash Valley Power Ass'n,
Inc. v. Rural Electrification Admin.*, 903 F.2d 445, 455 (7th Cir.
1990)).

The district court here applied a two-part test drawn from
*Telamon*. In that case, another judge from the same district
summarized the governing law as follows: a court should find
that a plaintiff split her claims when "(1) the second claim is
based on the same transaction or occurrence as the first claim
and there is (2) an identity of parties or their privies." 2016
WL 67297, at *2. (Although it was not clear from the district
court's citations whether it was looking to federal law or In-
diana law, on appeal we explicitly recognized that the *Semtek*
approach governs. See *Telamon*, 850 F.3d at 872–73.) The court
in *Rexing II* determined that Rexing had merely repackaged
its failed attempt to sue Rembrandt for breach of contract as a
tort case, and that the rule against claim splitting barred the
second action.

Though acknowledging that Indiana law prohibits claim splitting, Rexing argues that the district court applied the wrong test for establishing whether claim splitting had occurred. Rexing points to Indiana cases that have held that "the test for making [the claim-splitting] determination is whether identical evidence will support the issues involved in both actions." *MicroVote*, 924 N.E.2d at 192. Referring to this approach as the "identical evidence test," Rexing argues that in Indiana, the rule against claim splitting applies only when there is no difference between the evidence needed to support the claims in each of the two actions. Because the elements of a claim for breach of contract and a claim for deception or conversion are supported by different facts, Rexing reasons, different evidence is required to substantiate each claim and thus it did not split its claims across the two cases.

Although Indiana courts do sometimes use the term "identical evidence," Rexing overstates the significance of those words. The rule against claim splitting does not apply exclusively to cases in which the second claim can be supported only by exactly the same evidence that supported the first. The Indiana cases on point show that the "identical evidence" test requires only that "the same general evidence would be used to adjudicate all of [the] claims." *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1047 (Ind. Ct. App. 2011).

There is no meaningful difference between the "identical evidence" test, so understood, and the test that the district court applied. We have held as much in earlier cases applying Indiana's identical-evidence test. *Wabash Valley*, 903 F.2d at 456 (observing that identical evidence is "another way of asking whether the two suits deal with a common occurrence"); *Atkins v. Hancock Cnty. Sheriff's Merit Bd.*, 910 F.2d 403, 405 (7th

Cir. 1990) ("Understood literally, [the identical-evidence] approach would confine a plea of res judicata to cases in which the claim in plaintiff's second suit was identical to the claim in his first, and would invite piecemeal litigation with a vengeance. We have not thought that Indiana intended to confine res judicata so narrowly[.]"). Although the Indiana Supreme Court has not ruled on this issue directly, it has favorably cited our cases applying the identical-evidence rule. See, *e.g.*, *Erie Ins. Co. v. George*, 681 N.E.2d 183, 190 (Ind. 1997) (citing *Wabash Valley*, 903 F.2d at 455). Thus, the district court properly applied Indiana's law concerning claim splitting, and Rexing's argument to the contrary fails.

B

Rexing also urges that the bar on claim splitting does not apply to this case because the claim in *Rexing II* arises from events that occurred after it filed *Rexing I*. Because Rexing was unaware that Rembrandt would not return the EggsCargoSystem at the time it filed *Rexing I*, it argues, the rule against claim splitting does not apply.

As the district court held, Rexing has not shown that material unknown facts were later revealed. Before initiating *Rexing I*, Rexing had already formally demanded the return of the EggsCargoSystem. It again demanded that Rembrandt return the System the day after filing *Rexing I*. Additionally, in its complaint in *Rexing I*, Rexing sought the recovery of the cost of the EggsCargoSystem. The conclusion is irresistible that Rexing knew at the time it filed the first case that the custody or ownership of the EggsCargoSystem was part of the dispute between the parties; it thus should have raised anything it had to say about that claim at the time. No material facts that were unknown at the time Rexing filed *Rexing I* later

came to light. Rexing cannot evade the application of the rule against claim splitting by arguing that it could not have raised its arguments about the System at the time it filed *Rexing I* because the claim was not ripe or the facts were unknown.

C

Finally, Rexing argues that an exception to the rule against claim splitting should apply to cases of conversion. Pointing to the American Law Institute's Restatement (Second) of Judgments, it argues that "continuing or concurrent wrong[s]" are exempt and that the tort of conversion is such a wrong. RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(e) (ALI 1982); see also *Van Bibber v. Norris*, 404 N.E.2d 1365, 1380 (Ind. Ct. App. 1980) ("Conversion is a continuing tort, lasting as long as the person entitled to the use and possession of his property is deprived of it."). We are also unpersuaded by this argument.

Rexing has not directed our attention to any case law showing that Indiana has adopted Section 26 of the Restatement. But even if we were to overlook this serious deficit, it would not help Rexing. Section 26(1)(e) applies only to situations in which a harm cannot be remedied at one go. The Restatement gives nuisance as an example of such a continuing tort. There, a defendant's activity on her own land causes ongoing harm to the plaintiff in the use of her land. In such cases, the plaintiff may be able to sue repeatedly to remedy the continuing harm as it accrues. Even in such a case, however, "the plaintiff, to avoid splitting, must claim all damages suffered [up] to the time of the suit." RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. h.

Conversion is not a continuing tort within the meaning of Section 26(1)(e). Even viewing the facts in the light most favorable to Rexing, Rembrandt unlawfully appropriated the EggsCargoSystem only one time. Rexing knew that Rembrandt remained in possession of the System at the time it filed *Rexing I*; indeed, it had already demanded that the System be returned to it. The fact that Rembrandt continued to refuse to return the System does not render the conversion a "continuous" tort in the sense intended by the Restatement (or in any other sense we normally see). Indiana courts have dismissed conversion claims on claim-splitting grounds, demonstrating that Indiana law does not recognize the rule that Rexing advocates. *Hilliard*, 957 N.E.2d at 1048. There is no continuing tort exception to the rule against claim splitting in cases of conversion.

## III

Despite Rexing's best efforts to paint these proceedings in a different light, we agree with the district court that they were logically part of *Rexing I* and that the attempt to rehash them in *Rexing II* was an impermissible effort at claim splitting. We therefore AFFIRM the judgment of the district court.